Philip M. AUNER et al., Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 17819.

United States Court of Appeals, Seventh Circuit.

March 3, 1971.

20. The phrase, "during its application to said joint", appears in claims 2, 3, and 4, but not 1 nor 5.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Janet R. Spragens, Lee A. Jackson, Harry Baum, Jeanine Jacobs, Attys., Dept. of Justice, Washington, D. C., Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., for defendant-appellant.

Marvin Goldenhersh, John Vassen, Walker & Williams, Goldenhersh & Goldenhersh, East St. Louis, Ill., for plaintiffs-appellees.

Before DUFFY and HASTINGS, Senior Circuit Judges, and FAIRCHILD, Circuit Judge.

FAIRCHILD, Circuit Judge.

This appeal presents the question whether a particular profit sharing plan met the non-discrimination requirement of 26 U.S.C. § 401(a) (4) so that the trust which implemented the plan was a qualified trust under § 401.

The allocation formula under the plan was heavily weighted in favor of employees with seniority, previous experience in similar work, and professional or vocational training. The government contends that under the particular circumstances the plan, with this formula, was discriminatory, failing to fulfil the condition prescribed by § 401(a) (4), as follows:

> "If the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees."

This is an action for refund of income taxes, brought by participating employees and their spouses and the trustees of the trust.[1] The district court de-

---

1. The employer was not involved since the employees' rights were immediately non-forfeitable and the contributions were deductible for that reason under 26 U.S.C. § 404(a) (5).

cided that the plan did not discriminate under § 401(a) (4) and gave judgment for plaintiffs. The government appealed.

The employer was the Medical-Surgical Clinic of East St. Louis. During the years in question the clinic was a professional association organized under the laws of Illinois. The association created a profit sharing plan and trust as of July 1, 1959, calling originally for allocation of the association's contributions among the accounts of participating employees in proportion to their respective total amounts of compensation. A contribution was made which provided each employee with an allocation of 5% of his compensation. An employee became eligible after three years of employment by the association or the partnership which preceded it.

Our problem arose out of an amendment a year later creating a new allocation formula. Under it each participating employee was assigned Seniority Points and Training and Experience Points. His total of Seniority Points was multiplied by the total of his Training and Experience Points. The product of the two was used as a percentage figure, and there was credited to him that percentage of his total compensation in each fiscal year. In practice, and as implied by the formula, the association contributed each year an amount sufficient to make such allocations in full. The number of Seniority Points ranged from one to five, depending on years of continuous service (up to 13) with the association and its predecessor partnership. Training and Experience points depended on the number of years' experience in previous similar employment and time spent in specific types of training.

During the years in question, the association had some thirty employees. The participating employees were Drs. Goldenberg, Bryan Auner, and Doubek, and eight supporting personnel, some of whom were not employed or did not participate throughout these years. We here set forth Exhibit 3, which covers all the participating employees except two who were participants for less than 9 months. Exhibit 3 shows the percentage allocation for each employee, his total compensation, and the amount of contributions allocated to him in the fiscal years ending June 30, 1962, 1963, and 1964.

Exhibit 3.

| Officers | Years of Service | Service Points | Education & Experience Points | Allocation | Total Compensation | Contributions to plan | Percentage Allocation | Total Compensation | Contributions to plan | Percentage Allocation | Total Compensation | Contributions to plan | Percentage Allocation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Status as of June 30 1961 | | | Fiscal year ending June 30, 1962 | | | Fiscal year ending June 30, 1963 | | | Fiscal year ending June 30, 1964 | | |
| Max Goldenberg | 14 | 5 × 4 | = 20% | | 44,846 | 8,969 | 20% | 39,621 | 7,924 | 20% | 39,155 | 7,831 | 20% |
| Theodore Bryan | 7 | 2 × 6 | = 12% | | 35,557 | 4,267 | 12% | 36,927 | 4,431 | 12% | 41,952 | 5,034 | 12% |
| Philip Auner | 7 | 2 × 1 | = 2% | | 31,129 | 623 | 2% | 30,299 | 606 | 2% | 35,478 | 710 | 2% |
| William Doubek | 4 | 1 × 6 | = 6% | | 26,763 | 1,606 | 6% | 26,272 | 1,576 | 6% | 27,058 | 3,247 | 12% |
| Total | 8 | | | | 138,295 | 15,465 | 11.18% | 133,119 | 14,537 | 10.92% | 143,643 | 16,822 | 11.71% |
| Other personnel * | | | | | | | | | | | | | |
| Eleanor Pyatt | 14 | 5 × 1½ | =7½% | | 5,110 | 383 | 7½% | 5,183 | 389 | 7½% | 5,677 | 416 | 7½% |
| Freda Stroud | 9 | 2 × 2½ | = 5% | | 4,325 | 216 | 5% | 4,639 | 231 | 5% | 4,908 | 245 | 5% |
| Beverly Kraft | 3 | 1 × ? | = 1% | | 3,516 | 49 | 1.4% | 3,607 | 72 | 2% | 3,872 | 77 | 2% |
| Edna Holden | 2¾ less | none | | | 3,456 | 60 | 1.7% | 3,578 | 71 | 2% | 4,040 | 81 | 2% |
| Loretta Kozar | than 2 less | none | | | | | | 4,600 | 92 | 2% | | | |
| Marilyn Westerfield | than 1 | none | | | | | | | | | 3,615 | 72 | 2% |
| Total | 7 | | | | 16,407 | 708 | 4.31% | 21,607 | 856 | 3.96% | 22,112 | 891 | 4.03% |

* Excludes personnel who were qualified less than 9 months of the year.

As is readily noted from Exhibit 3, Dr. Goldenberg received an allocation in each year equal to 20% of his compensation, more than 2½ times the percentage allocation to Miss Pyatt, who received the highest percentage among the supporting personnel. Dr. Bryan's 12% was substantially greater than Miss Pyatt's. Dr. Doubek's percentage allocation was also 12% in fiscal 1964. In the earlier two years his was 6%, and, although less than Miss Pyatt's, was more than any other of the supporting personnel. The average percentage allocation for all doctors varied from 10.52% to 11.71%, while this figure for all participating supporting personnel varied from 3.9% to 4.31%.

Aggregating all three years, the total contribution by the association was $49,279. $2,455, less than 5%, was allocated to the supporting personnel, although the compensation received by that group was almost 13% of the total compensation received by all participants. 95% was allocated to the doctors, who received 87% of the total compensation. Taking the doctors as a group the ratio of benefits to compensation was substantially more favorable to them than to the other employees.

The four doctors were members and officers of the association. Dr. Goldenberg was president of the association, was apparently the founder of the partnership which preceded the association, and was the author of the plan. More than half the total contributions were allocated to him. The four doctors were "highly compensated employees," at least by comparison with the other employees.[2]

26 U.S.C. § 401(a) (5) provides that a plan shall not be considered discriminatory merely because the contributions or benefits for employees bear a uniform relationship to the total compensation of such employees. Thus a fixed ratio of allocation to compensation is not, per se, deemed discriminatory even though it will result in larger dollar amounts being allocated to the more highly paid employees. As we read the Congressional purpose an employee who renders more valuable service may receive greater rewards, channeled through a qualified plan and trust, in the same proportion that his direct compensation reflects such difference in value of service, but a qualified plan and trust is not to be used to compound such difference in rewards in favor of the more highly paid. It seems to us to follow that a plan must be deemed to discriminate where the ratio of allocation to compensation is substantially higher for those named in § 401(a) (4) than for other employees. We conclude that the substantially more favorable ratio of allocation to compensation, enjoyed by the group of doctors in this case, is discrimination within the meaning of the provision.

C. I. R. v. Pepsi-Cola Niagara Bottling Corporation[3] dealt directly with § 401(a) (3), but is instructive here. Judge Friendly's opinion in that case set forth portions of the legislative history in this area, and referred on page 392 to § 401(a) (4) as a companion provision "which guarded against the danger that highly paid employees would gain a disproportionate share of pension benefits despite the fact that eligibility requirements were not found discriminatory under § 401(a) (3)."

In a case decided since the district court decision now at bar, the United States Tax Court held a particular plan discriminatory where a formula giving weight to past service assured the sole stockholder of receiving a more favorable allocation of the employer contributions than any other participant.[4]

---

2. See Rev.Rul. 56–497, 1956–2 Cum.Bull. 284, 286, approved in C.I.R. v. Pepsi-Cola Niagara Bottling Corporation (2d Cir., 1968), 399 F.2d 390, 393.

3. *Supra,* fn. 2.

4. *McMenamy v. Commissioner of Internal Revenue* (1970), 54 T.C. 1057.

**520**

The tax court noted the commissioner's administrative construction of the statute, as follows:

"At about the time that provision of regulations was adopted, the respondent issued I.T. 3685, 1944 C.B. 324, restated in Rev.Rul. 68–653, 1968–2 C.B. 177; I.T. 3686, 1944 C.B. 326, restated in Rev.Rul. 68–654, 1968–2 C.B. 179; and P.S. No. 28 (1944), restated in Rev.Rul. 68–652, 1968–2 C.B. 176. In these rulings, he made clear that in his opinion, prohibited discrimination occurs when, as a result of using the years of service, the ratio between the employer contributions allocated to the accounts of the members of the prohibited group to their compensation exceeds the ratio with respect to other participants. Thus, the use of years of service in this case results in prohibited discrimination under the regulations as so interpreted. The regulations, together with the administrative interpretation of them, were adopted in 1944—shortly after the enactment of section 401(a) (4), and they have stood the test of time. Twice—in 1954 and 1962—Congress has considered the requirements for qualification of a plan, and nothing was done to indicate any disapproval of that provision of the regulations or the administrative interpretation of it. These circumstances furnish strong support for accepting the validity of the regulations as interpreted. United States v. Correll, 389 U.S. 299 [88 S.Ct. 445, 19 L.Ed.2d 537] (1967)."

■ Plaintiffs point out that Dr. Auner, who had only one Training and Experience Point (apparently for one year of internship), had a percentage allocation of 2%, lower than two of the lower paid participating employees, and the same as the others. We do not think that the fact that the formula did not produce discrimination in favor of one of the four officers and highly paid employees is sufficient to save the plan from the consequences of the substantial discrimination in favor of the other three.

Plaintiffs argue the proposition that whether the plan discriminated in favor of the officers or highly compensated employees is a question of fact, and that the finding of the district court was not clearly erroneous. All facts, however, as to the practice under and effect of the plan, as well as its terms, were stipulated, and we conclude that its discriminatory effect appears from such facts as a matter of law.

Plaintiffs produced testimony tending to show that Dr. Goldenberg designed the point formula for the purpose of forming a strongly knit organization, attracting competent and well trained men and women at all levels, overcoming the problem of retaining competent employees in East St. Louis, and creating incentive for additional training and education for all employees at all levels. The question here, however, is whether the plan discriminated in favor of the officers or highly compensated employees, and if it did, the fact that the formula was thought to achieve the employment objectives outlined is irrelevant. We agree with the observation of the tax court in McMenamy,[5] "Were we to hold that section 401(a) (4) applies only if the more favorable allocation cannot be justified by some business reason or if there is invidious or rank discrimination, the effect of such provision would be substantially curtailed."

The judgment appealed from is reversed and the cause remanded with directions to dismiss the complaint.

5. Supra, fn. 4.