**TIME OIL COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15444.**

United States Court of Appeals
Ninth Circuit.

July 30, 1958.

Jones & Grey, A. R. Kehoe, Hargrave A. Garrison, II, Seattle, Wash., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Helen Buckley, Ellis N. Slack, Robert N. Anderson, Marvin W. Weinstein, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before STEPHENS, Chief Judge, and POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

The first question on this review is whether management and management's trustees have so clumsily handled pension trust funds supplied by the Time Oil Company as to cause it to lose the tax advantages to which it presumptively was entitled, the trust having been previously approved by the Commissioner of Internal Revenue under Section 165 (a) of the 1939 Internal Revenue Code, as amended, 56 Stat. 862, 26 U.S.C.A. § 165(a). The tax court has said: "Yes."

Of course, under Sec. 165,[1] for the tax advantages to accrue, no part of the corpus or income of the trust may be used for or diverted to purposes other than for the *exclusive benefit of the settlor's employees or their beneficiaries.* (Emphasis supplied.)

If this statute were literally construed a trust just could not invest in any securities or obligations of the employer-settlor. Apparently the commissioner has realized that if contributions require the employer to permanently take the amount thereof in cash out of a going business, impairing the company's ability to survive or to grow, there then would be many companies, particularly small ones, which just couldn't have pension plans. Accordingly, the commissioner, as he did here on May 28, 1945, has approved plans which permit a corporate employer to invest pension funds in first mortgage bonds or cumulative preferred stock of the employer. Thus the commissioner has not denied because of the word "exclusive" in the statute a plan with certain indirect but substantial benefits to the employer, so long as the direct pecuniary benefits still run to the employee. Such construction by the commissioner we accept. On the other hand, had he declined approval of this plan initially this court is not prepared to say the commissioner should not be sustained.

■ The commissioner's authority under Section 165 to bind the government is far different than that of the Bonneville, Idaho, agents in Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10. Subsequent commissioners are bound by the acts of earlier commissioners in approving pension plans. H.S.D. Co. v. Kavanagh, 6 Cir., 191 F.2d 831.

And here in Time Oil the commissioner has blessed the basic plan. But of course he did not approve some other plan. Surely a slight variation from the plan will not cause the trust and the employer to lose its tax advantages which loss in the end usually will hurt the employee too.

■ We think the test must be that before disallowing deductions once approved there must be a finding that the variations from the plan somehow prejudiced the benefits to be received by the beneficiaries and somehow improved or increased the indirect benefits to the employer already inherent in the plan. Although the amount in dollars is large, yet if the shift in advantage to employer or employee is not very tangible it would appear that the variation is de minimis. Surely substance rather than strict form should be the guide.

■ Now the variations from the approved plan must be considered. The big one is that when the employer-

---

1. This case arises entirely under the 1939 Internal Revenue Code. While provisions of the 1954 Internal Revenue Code and regulations thereunder have been ex- amined by the court, it should not be considered that they have entered into the decision herein.

trustor's payments under the plan became due to the trustees (all selected by management) cash was not immediately paid but instead the employer issued to the trustees demand notes for the amount due. The notes were non-interest bearing. However, it was the uniform practice of the employer to later issue cumulative preferred stock back-dated to the dates of the notes. One is entitled to assume that if insolvency had come upon the company the notes would stand on a higher basis in liquidation than cumulative preferred stock. Without its standard practice of back-dating the stock when issued, the situation might be open to a finding of fact that an employer, abundantly solvent, did get a new benefit by not paying interest during the interim. Under the circumstances, here one cannot find a benefit to employer greater than what it already had under the plan or any less benefit to the employees.

The trustees failed to keep books and records for the first two years of the plan and they were not aware until November 18, 1950, of some benefits which became payable under the plan to a few terminated employees as of December 31, 1949. In this sloppiness no gain to the employer or loss or prejudice to the employee is to be found, although the practice is not to be commended.

An additional imperfection is to be found in that the trustee made no distributions whatever to the employees until 60 days prior to the hearing in the tax court in this case. This is explained by the fact that the commissioner had the taxpayer "on the run." With the whole plan, as operated, challenged by the commissioner, the trustees and the taxpayer did not know what to do. When this default was triggered by the commissioner certainly the taxpayer is entitled to judicial charity unless substantial gain to the taxpayer or substantial loss to the beneficiaries is shown. It was not.

The other variations in the plan as operated are covered by what has been said with reference to the items specifically mentioned.

At this point a caveat should be issued. This court has not reached the point herein of what should be held if the commissioner after discovering variations in form though not of substance should demand literal compliance in futuro with the approved plan and should fail to get it. A court might grant him the prerogative of disallowing the deductions after such a warning. He is to be commended for insisting that taxpayers conform to the plan they established with his approval, but the interest of employees is also to be considered. Here while hard justice might befit Time Oil Company's officers, yet prospective consequences of injury to the employees from the commissioner's position here are quite possible as contrasted with the lack of injury shown to them in the shortcomings of the errant taxpayer.[2]

■ After taking the view of the law hereinabove indicated, this court must now come to the question of the year of deductibility of the employer's payments. The Third Circuit has taken the view that a taxpayer on an accrual basis is entitled to deduct promissory notes as a contribution in the year issued. Sachs v. Commissioner (Slaymaker Lock Co. v. Commissioner, 3 Cir., 208 F.2d 313. This court fully agrees with the case of Anthony P. Miller, Inc., v. C. I. R., 3 Cir., 164 F.2d 268, 4 A.L.R.2d 1219 (on its facts) upon which the Court of Appeals for the Third Circuit relies in Sachs and Slaymaker. Under Section 23(p) (1) (E) of the 1939 Code, 26 U.S. C.A. § 23(p) (1) (E) a taxpayer "on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on ac-

---

2. The tax consequences to the trust and to the employee-beneficiaries because of the commissioner's change in position as to the plan because of the variations from the approved plan were not before the tax court for decision and therefore not here. But some consequences do lurk.

count of such taxable year and is made within sixty days after the close of the taxable year." The Sachs-Slaymaker decision is a reasonable, but not a required extension of the Miller case. The point is a close one. In such circumstances it seems unnecessary to set up a conflict between circuits. Therefore, it is held that delivery of the notes to the trustee constituted payment by Time Oil Company as of the delivery date. This would determine the year of deductibility.

In the background of this case is the question of amounts allowable as deductions under permissible limits of the statute. It would appear that under the principles laid down the allowable deductions can be readily calculated by the tax court for the years in which the note obligations were discharged.

The case is remanded for further proceedings consistent with this opinion.