**CENTRAL MOTOR COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 9679 Civil.

United States District Court,
D. New Mexico.

Feb. 10, 1976.

Schlenker, Parker, Payne & Wellborn, P. A., Albuquerque, N. M., for plaintiff, Central Motor Co.

R. E. Thompson, U. S. Atty., Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N. M., Eugene Sayre, and Lawrence Jones, Jr., Tax Div., Dept. of Justice, Dallas, Tex., Jerome Fink, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for USA.

### MEMORANDUM OPINION

BRATTON, Chief Judge.

Plaintiff Central Motor Company (Central) has brought civil action for the refund of additional income taxes paid by it for the years 1966, 1967, and 1968. The additional

income taxes in question were assessed pursuant to the Internal Revenue Commissioner's disallowance of deductions initially taken by Central for contributions claimed to have been paid to a qualified profit-sharing plan. This matter comes on as a result of the parties' agreement to submit to the Court for decision the question of the deductibility of these alleged profit-sharing plan contributions.

Central operates an automobile dealership, and, during the years in question, C. E. Gurley owned the controlling interest in its stock. He was an officer and director of that corporation along with his son.

On or about May 31, 1962, Central adopted a profit-sharing plan and related trust for the benefit of its employees. The trust instrument authorized the trustees to invest the trust assets in: (1) common and preferred stocks; (2) governmental bonds; (3) mutual fund shares; (4) savings deposits; and (5) real property mortgages. By letter dated November 20, 1962, the Internal Revenue Service advised Central that the plan met the requirements of section 401(a) of the Internal Revenue Code of 1954 and that the related trust was exempt from income taxation under section 501(a) of the Code.

During the first fiscal year in which contributions were made under the plan, the trustees invested the funds in two savings and loan associations, pursuant to their resolutions of July 2, 1962, and October 1, 1962. On June 29, 1963, the trustees entered into a verbal agreement with Credit Investment, Inc. (Credit), to loan it the trust's funds at a higher rate of interest than that which was available through the savings and loan institutions. Credit was a company engaged in financing retail purchase contracts for automobiles sold by Central. Throughout the years in suit, C. E. Gurley served as chairman of Credit's board of directors, and he had practical control of Credit's business, though his children were its principal stockholders. On July 17, 1963, the trustees withdrew the trust funds from the savings and loan associations and turned them over to Credit, and Credit gave the trust its demand promissory note. Subsequently, at the trustees' request, Central delivered directly to Credit its checks each month for the amounts of the contributions required under the plan. Credit used the borrowed trust funds to finance Central's auto sales.

As each contribution was received by Credit from Central, Credit executed a new, increased demand note to the trust, and its previous note was marked "paid by renewal." Each new note took into account the increased contribution and interest to date on the prior principal. The plan never received an interest payment other than in this manner.

Employees who became eligible to receive benefits under the plan received payments from Central. If the amount to be paid as benefits in any month exceeded the amount to be contributed by Central during that month, Credit issued a check to Central to make up the difference and also issued a note with a correspondingly reduced principal. Aside from this, Credit never made payments on the notes it issued.

Credit's demand notes were, for the most part, unaccompanied by any written evidence of security, and its financial status was such that it did not have funds to pay the notes during any of the years in suit. Only three of the notes issued by Credit during the years 1966 through 1968 were personally endorsed by C. E. Gurley. Mr. Gurley and a trustee have testified that pursuant to a verbal commitment, Gurley's personal guarantee was understood to accompany each of Credit's notes to the trust.

Upon audit, the Commissioner of Internal Revenue determined Central was not entitled to deduct its alleged contributions to the plan for the years 1966, 1967, and 1968. Central paid the resulting additional income taxes but now seeks a refund of that sum.

The question presented by this matter is whether Central is entitled to deductions for the years 1966, 1967, and 1968, under section 404(a)(3) of the Internal Revenue Code of 1954, as a result of contributions it claims to have made to an alleged qualified profit-sharing plan which met the require-

ments of section 401(a) of the Code.[1] Two issues bearing upon this central question have been raised: whether the profit-sharing plan was operated for the exclusive benefit of Central's employees and whether the contributions were actually paid.

Section 401(a) of the Internal Revenue Code of 1954 contains the requirements which a profit-sharing plan must satisfy in order to qualify thereunder. If a profit-sharing plan qualifies, one significant tax consequence is that an employer's contributions to the plan's trust are deductible under section 404(a)(3) of the Code. For a trust to qualify under section 401(a), it must be part of a profit-sharing plan established by an employer for the exclusive benefit of his employees. Treas.Reg. § 1.401–1(a).

It has been repeatedly stated that the primary purpose of benefitting employees or their beneficiaries must be maintained with respect to investments of the trust funds as well as with respect to other activities of the trust. Rev.Ruls. 73–380 (1973–2 Cum.Bull. 124), 73–282 (1973–2 Cum.Bull. 123), 69–494 (1969–2 Cum.Bull. 88). To be consistent with the exclusive benefit requirement, an investment must meet the following articulated investment requisites: (1) the cost must not exceed fair market value at the time of purchase; (2) a fair return commensurate with the prevailing rate must be provided; (3) sufficient liquidity must be maintained to permit distributions in accordance with the terms of the plan; and (4) the safeguards and diversity that a prudent investor would adhere to must be present. Rev.Ruls. *supra.*

In exchange for demand promissory notes, virtually all of the trust's assets were loaned to a corporation which was subject to the de facto control of the employer corporation's principal shareholder. The borrowing corporation lacked the financial ability to redeem the notes, and the loans were not adequately secured to protect the employees, for example, in the event of C.

E. Gurley's death, among other contingencies. Further, the loans were continued over a number of years without any real payment of interest or any substantial repayment of principal. Under the circumstances, the trustees' loans to Credit failed to satisfy the third and fourth investment requisites which were enumerated in the previously discussed Revenue Rulings. Thus, the trust's investments in Credit were not maintained for the employees' exclusive benefit.

A plan declared qualified by the Commissioner at its inception may lose its qualification if it is administered or operated in a way that violates the fundamental purpose of section 401. *See Baker National Bank v. Commissioner,* P–H Tax Ct. Mem. ¶ 74,104 (1974), *citing Time Oil v. Commissioner,* 26 T.C. 1061 (1956), *remanded on other grounds,* 258 F.2d 237 (9th Cir. 1958). Before disallowing an employer's deductions with respect to an employees' plan once approved, "there must be a finding that the variations from the plan somehow prejudiced the benefits to be received by the beneficiaries and somehow improved or increased the indirect benefits to the employer already inherent in the plan." *Time Oil v. Commissioner,* 258 F.2d 237, 238 (9th Cir. 1958).

The operation of the plan in question was varied to the substantial prejudice of the employees and to the greatly increased benefit of Central after the first fiscal year, when the trust's assets were no longer invested in savings deposits and, instead, were invested in Credit's inadequately secured demand notes. Once the trust contributions were loaned to Credit, Central was benefitted in that Credit used the borrowed fund to finance Central's auto sales. The inadequately secured loans to Credit prejudiced the employees' interests insofar as their funds were placed at the sole risk of a business which was financially incapable of repaying its notes. As a result of the loans to Credit, the trust lost its qualified

---

1. The deductibility of the alleged contributions as contributions to a non-qualified profit-sharing plan is not treated by the Court.

status under section 401(a), and, therefore, section 404(a)(3) was not applicable to enable Central to properly claim deductions thereunder for the years 1966, 1967, and 1968.

 During the taxable years in issue, Central claims it made contributions to the trust by its delivery of checks to Credit and Credit's issuance of notes to the profit-sharing trust for the amount of such contributions. The Government contends no payments were made to the trust on the ground that the trust's receipt of Credit's demand notes did not constitute payment by Central within the meaning of section 404(a) of the Code. It is concluded that this contention should be rejected regardless of whether Central's checks or Credit's notes are looked to for satisfaction of the payment requirement. An employer company's check constitutes payment within the meaning of section 404(a). Further, in this Circuit, Credit's notes constitute payment for purposes of section 404(a). *Wasatch Chemical Co. v. Commissioner,* 313 F.2d 843 (10th Cir. 1963).