PITTMAN CONSTRUCTION CO., INC.

v.

UNITED STATES of America.

Civ. A. No. 76–1017.

United States District Court,
E. D. Louisiana.

Aug. 19, 1977.

---

Jack M. Weiss, Hirschell T. Abbott, Jr., New Orleans, La., for plaintiff.

Leonard P. Avery, U.S. Atty., New Orleans, La., Jack D. Warren, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

ALVIN B. RUBIN, District Judge:

Plaintiff's action for a refund of federal income taxes of $17,279.69, plus interest, alleged to have been erroneously assessed and collected for the fiscal years ended January 31, 1970, and January 31, 1971, raises two questions:

1. Whether deductions for contributions to a pension plan were properly disallowed as discriminatory under Section 401(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 401(a), when, due to an error as to his date of birth, a principal officer was included in the plan despite the fact that he was older than the maximum qualifying age.

2. If this exclusion constitutes "discrimination" forbidden by Section 401(a), whether the circumstances of this case justify retroactive revocation of a previous determination letter by the District Director of Internal Revenue in favor of the plan.

## I.

On September 1, 1967, a pension plan and trust was established by plaintiff, Pittman Construction Company for the benefit of its full time employees who had completed four years of service, had attained the age of 30, and had not attained the age of 57 as of the effective date of the pension plan, or any subsequent anniversary date. Among the employees participating in the plan was T. A. Pittman, president and fifty percent owner of the taxpayer. T. A. Pittman's year of birth was listed on enclosures to the pension plan as 1912; hence, he was represented to be 55 years old at the inception of the plan. In fact, he was then 63 years old, but the company records maintained for other purposes showed him to be 55, and the

misrepresentation appears to have been made without intention to deceive. The error was contained in data supplied by the taxpayer to the insurance agent who devised and installed the plan. It was not the fault of the insurance agent.

On June 19, 1969, the District Director of Internal Revenue issued a favorable determination letter stating that the pension plan was qualified under Section 401(a) so as to permit the taxpayer to deduct from its gross income for each particular year in question those contributions made to the pension plan on behalf of its qualified participating employees. The taxpayer then filed its corporate income tax returns (Forms 1120) for the fiscal years ending January 31, 1970, and 1971, and listed its taxable income as being $105,244.09 and $58,044.34, and its tax liability as being $48,203.77 and $22,384.76 respectively. Contributions made to the pension plans for the two years in question, which totaled $18,925.90, were deducted from the taxpayer's gross income for the purpose of computing its tax liability.

The District Director of Internal Revenue thereafter determined that, when the pension plan was created, the correct age of T. A. Pittman was 63 rather than 55 as had been represented by the taxpayer when it sought the determination letter. Furthermore, the District Director learned that four employees of the company who were more than 57 years old when the plan was created had been excluded from participating therein. Therefore, on September 10, 1971, the District Director of Internal Revenue mailed to the taxpayer a proposed revocation of the favorable determination letter on the grounds that the pension plan discriminated in favor of T. A. Pittman, an officer, shareholder and highly compensated employee of the taxpayer. On February 26, 1973, the District Director revoked the qualified status of the pension plan beginning with the year 1968 (including the taxable periods ending January 31, 1970, and 1971), and disallowed those deductions from gross income equal to the contributions made during these taxable periods. This resulted in an additional tax liability of $17,279.69, which was assessed against the taxpayer and thereafter paid in full.

## II.

Sections 401 through 404 of the Internal Revenue Code of 1954 set forth intricate rules governing the taxability to an employee and the deductibility by his employer of contributions to an employee's trust forming part of a pension, profit sharing, stock bonus, or comparable retirement plan. If a pension trust is "qualified" within the meaning of Section 401(a) of the Code, the resulting federal tax advantages are substantial. First, the investment income of the trust is exempt from taxation, 26 U.S.C. § 501(a); second, the trust benefits are not taxable to the employee-beneficiary until they are actually distributed or made available to him by the trust, 26 U.S.C. § 402(a); and third, the contributions made by the employer are currently deductible, whether or not the employee's right to the funds has become vested, 26 U.S.C. § 404(a). On the other hand, if a trust is not "qualified", the investment income of the trust is not tax exempt, and the employer's contributions are currently deductible only if the employee's rights with respect thereto are nonforfeitable, 26 U.S.C. § 404(a)(5), in which event the employee will be taxed currently on his share of the employer's contribution, 26 U.S.C. § 402(b).

A pension trust is not "qualified" for preferential tax treatment unless it satisfies the numerous requirements imposed by Section 401(a). As one of the tests for employee coverage, Section 401(a)(3) requires that a qualifying trust must benefit either a specific percentage of all full time employees or—

(B) such employees as qualify under a classification set upon by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

In addition, Section 401(a)(4) provides that a plan may not qualify unless "the contributions or benefits provided under the plan" do not discriminate in favor of officers, shareholders, supervisors or highly compensated employees.

These non-discrimination provisions are at the core of the pension trust provisions. The 1939 Code predecessor of Section 401(a)(3)(B) was first enacted as Section 162(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798. It was added to prohibit discrimination in coverage and intended "to insure that * * * pension * * * plans are operated for the welfare of employees in general, and to prevent the trust device from being used for the benefit of shareholders, officials, or highly paid employees." H.Rep.No. 2333, 77th Cong., 2d Sess., pp. 103–104 (1942–2 Cum.Bull. 372, 450). The Senate Finance Committee Report (S.Rep.No. 1631, 77th Cong., 2d Sess., pp. 136–138 (1942–2 Cum.Bull. 504, 606–607) ) contains the significant statement:

> If a plan fails to qualify under the * * * percentage requirements [of the predecessor of Section 401(a)(3)(A)] it may still qualify under * * * [subsection] (a)(3)(B), *provided always* that (as required by pars. (3) and (4) ) the plan's eligibility conditions, benefits and contributions do not discriminate in favor of employees who are officers, shareholders, supervisory employees, or highly compensated employees. (Emphasis added.)

That statement, including the "provided always" language, is incorporated in the current Treasury Regulations on Income Tax, 26 C.F.R. § 1.401–3.

By adopting the alternative tests for discerning discrimination, Congress sought in all cases to guarantee coverage of a representative group of employees in "qualified" pension plans. It provided automatic qualification for plans which covered a minimum percentage of all full time employees, and it offered the opportunity for qualification of more restrictive plans only in those cases where the Commissioner, after careful scrutiny, finds that the plan does not, in form or in operation, violate the non-discrimination

requirements of Section 401(a)(3)(B). See Judge Friendly's recital of the pertinent legislative history in *Commissioner of Internal Revenue v. Pepsi-Cola Niagara Bottling Corp.,* 2d Cir. 1968, 399 F.2d 390, 392–393. See also *United States v. Hall,* 8th Cir. 1968, 398 F.2d 383, 389–390; *Auner v. United States,* 7th Cir. 1971, 440 F.2d 516, 519; *Bernard McMenamy Contractor, Inc. v. Commissioner of Internal Revenue,* 8th Cir. 1971, 442 F.2d 359; *Tavannes Watch Co. v. Commissioner of Internal Revenue,* 2d Cir. 1949, 176 F.2d 211, 216; Goodman, 1970, 33 Journal of Taxation 270, 274–275.

■ The taxpayer's plan discriminated in favor of T. A. Pittman, president and majority stockholder of the taxpayer, and founder of the plan, by providing coverage for him when he was older than the maximum qualifying age. Because discrimination in favor of a highly paid and influential employee is the very circumstance that Section 401(a)(1) seeks to prevent, the taxpayer's plan could not qualify under Section 401.

### III.

The taxpayer contends that, even if the plan is discriminatory within the meaning of Section 401, so that the Commissioner would not approve the plan were he considering it for the first time, the plan has already been approved, and greater "discrimination" must be shown to warrant revocation of that approval than would warrant denial of qualification initially. It contends that the error giving rise to the discrimination was in good faith, that the employees who would otherwise benefit from the plan would suffer unduly if it is disqualified, and that, under these circumstances, retroactive revocation is not justified.

■ Under the circumstances presented here, the Commissioner's initial approval of the plan does not militate against its later disqualification. That ruling was valid only if the facts presented by the taxpayer at the time the ruling was requested were accurate. *Myron v. United States,* C.D.Cal.

1974, 382 F.Supp. 590, 597; Rev.Rul. 69–24, 1969–1 Cum.Bull. 110, 111. See also, *John Duguid & Sons, Inc. v. U. S.,* N.D.N.Y.1967, 278 F.Supp. 101; Section 1.401.–1(b)(3) of the Treasury Regulations; Rev.Proc. 62–31, 1962–2 Cum.Bull. 517. The Commissioner approved only a hypothetical plan that was not effectuated, and did not approve a plan providing benefits to a corporate president who was older than the maximum qualifying age while denying coverage to other younger employees.

■ The error first appeared in data compiled some time prior to November 1966 in conjunction with an employee census; this erroneous data was supplied to the insurance agent for purposes of the pension plan in 1967. It indicated that T. A. Pittman was 55 on May 4, 1967. Mr. Pittman stated in his affidavit that the public records of his birth were destroyed by fire. However, based on his son's birth certificate which recites that Mr. Pittman was 22 in 1926 when his son was born, Mr. Pittman now estimates that he was 63 at the inception of the plan in 1967. Were he 55 at the inception of the plan, as indicated in the data, he would have fathered his child at age 14. Although it is plausible to believe that Mr. Pittman was confused about his age, this discrepancy of eight years, when considered in light of the fixed reference point of his son's birth, could have been avoided by the exercise of due care. Because Mr. Pittman testified he could not recall another individual who might have furnished this information to his company, it is reasonable to assume he was the source of the incorrect information regarding his age. The insurance agent also testified that he discussed the pension plan with Mr. Pittman after it was completed, and that Mr. Pittman had an opportunity to examine the plan. It should have been obvious that the plan discriminated in Mr. Pittman's favor. However, the plan was not revised. As the facts recited above show, it was Mr. Pittman's own want of due care that precipitated the error, and the taxpayer's argument that the error was in subjective good faith, even if legally material, does not entitle the taxpayer to retain a status it

achieved only as a result of the taxpayer's misstatement of fact.

The taxpayer also argues that the disqualification of a pension plan affects not only the corporate taxpayer's deduction of contributions, but the fortunes of employees who may become taxable immediately on contributions for their benefit. See 26 U.S.C. § 402(b). In *Time Oil v. Commissioner of Internal Revenue,* 9th Cir. 1958, 258 F.2d 237, the court held that several insubstantial but knowing variations by an employer from an approved pension trust fund did not warrant disqualification of the plan. According to the court, " . . . the interest of the employees is also to be considered . . . [Although] hard justice might befit [the] officers, yet prospective consequences of injury to the employees . . . are quite possible. . . ." Ibid., 258 F.2d at 239. However, unlike the present deviation, the variations in the plan in *Time Oil* did not result in discrimination in favor of a highly paid and influential employee.

In *Myron v. United States,* C.D.Cal.1974, 382 F.Supp. 590, the district court, in a well-reasoned opinion, indicated that *Time Oil* would not preclude disqualification of a plan where an officer and shareholder were permitted to participate while other eligible employees were excluded. The failure to include those employees stemmed from a misunderstanding of the regulations permitting exclusion only of temporary employees (less than five months per year) and part-time employees (less than twenty hours per week).

■ However, the court in *Myron* did not reject the balancing process required by *Time Oil.* In *Myron* there was no threat to the interests of employees because Mrs. Myron was the *only* employee of her corporations included in the pension plan for the tax years at issue, and only Mrs. Myron would be hurt by a determination of disqualification. Hence, in determining whether revocation is warranted, the interests of employees who were not responsible for the taxpayer's error but who will none-

theless suffer from disqualification ought to be considered.

If the qualification of the plan is revoked, employees who were not responsible for the error that resulted in the discrimination may suffer the consequences of disqualification in addition to their employer. But whether those employees must be denied the tax benefits of a qualified pension plan is not an issue before this court.

The District Director of Internal Revenue, acting as the delegate of the Secretary of the Treasury, determined that, beginning with the year 1968, the qualified status of the plan ought to be revoked. Judicial review of this decision is necessarily limited and should not be set aside by the courts unless shown to be unreasonable, arbitrary or capricious. *Liberty Machine Works, Inc. v. Commissioner of Internal Revenue,* 1974, 62 T.C. 621, 631; *Loevsky v. Commissioner of Internal Revenue,* 1971, 55 T.C. 1144, 1149, aff'd, 3d Cir. 1973, 471 F.2d 1178; *Ed & Jim Fleitz, Inc. v. Commissioner of Internal Revenue,* 1968, 50 T.C. 384, 391.

### IV.

Finally, the taxpayer contends that it was not provided actual notice of the revocation as required by Proc.Reg. Section 601.201(n)(6), and that it did not receive an actual revocation letter "set[ting] forth the grounds upon which the revocation is being made and the reasons why the revocation is being applied retroactively." Rev.Proc. 72–3, Section 13, sub-paragraph .05. These procedural defects did not prejudice the taxpayer. It had more than an adequate opportunity to be heard. The contemplated procedures would have occurred after the deviation; they would not have cured it, nor offered the taxpayer a timely opportunity to cure it.

Accordingly, the plaintiff's motion for summary judgment is DENIED, and the defendant's motion for summary judgment is GRANTED.