BING MANAGEMENT COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bing Management Co. v. Commissioner
Docket No. 9096-75.
United States Tax Court
T.C. Memo 1977-403; 1977 Tax Ct. Memo LEXIS 40; 36 T.C.M. (CCH) 1633; T.C.M. (RIA) 770403; November 21, 1977, Filed Alvin R. Wohl, for the petitioner. Bryce A. Kranzthor, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: This proceeding involves a determination of deficiency in income tax against petitioner in the amount of $25,076.48 for the fiscal year ended March 31, 1973. As a result of concessions made by the parties, the only issue remaining *41 for decision is whether petitioner's pension and profit-sharing plans qualify under section 401 or section 405. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Bing Management Company, Inc., petitioner herein, is a Nevada corporation. At the time of filing its petition herein, its principal place of business was in Nevada. Petitioner keeps its books and files its income tax returns on the basis of a fiscal year ending March 31. Petitioner's corporate income tax return for its taxable year ended March 31, 1973, was duly filed with the Internal Revenue Center in Ogden, Utah. In May 1974, an amended return for that taxable year was also filed with the Center in Ogden, Utah. Bing Management Company and Bing Construction Company are controlled corporations within the meaning of section 1563. D. Gerald Bing was president and sole stockholder of Bing Management Company and also president of Bing Construction Company. On April 17, 1972, Bing Management Company *42 adopted a pension plan and a profit-sharing plan for its employees which purported to be "for the exclusive benefit" of such participants. At the same time, separate deeds of trust were executed implementing such plans, pursuant to which D. Gerald Bing and D. Gerald Bing, Jr., his son, were designated as co-trustees. With respect to the investment of funds held in trust, Article III.A of the pension plan and Article XIII.A of the profit-sharing plan contained, in identical language, the following: 1. Investment of funds held in each trust created under this Plan hereinafter referred to as the "Trust" shall be made by the Trustee from time to time serving in the following manner: A. As directed by a Participant under any right to direct investments given him under the provisions of Exhibit A, which right of direction is limited to investment in life insurance and annuity contracts. B. Except as provided in subparagraph A next preceding, as directed by the Member under the provisions of Exhibit A. 2. All investment directions of the Participants and Members shall be communicated to the Trustee by the Committee or Administrator and shall be in compliance with directions *43 contained in Paragraph 1 above, or in the absence of such effective direction the Trustee shall have full authority regarding Trust contributions and assets as provided in the Trust Agreement creating the Trust under this Plan. The trust agreements entered into pursuant to the pension plan and the profit-sharing plan empowered the trustees in Section 5.A: To invest or reinvest the Trust Fund in any and every kind of property, real or personal, wherever situated, whether or not authorized by any present or future law for the investment of trust funds, including any common trust fund administered by the Trustee; to grant options to purchase any property; and to make commitments either alone or in company with others to purchase at any future date any real or personal property; By letters dated July 28, 1972, the respondent notified petitioner that the pension plan and the profit-sharing plan qualified under section 401 or section 405. During the fiscal year ended March 31, 1973, Bing Management Company contributed a total of $110,200.00 to the profit-sharing and pension plans. Separate accounts were not maintained for the pension trusts and the profit-sharing trusts. The *44 amounts received and paid out from the common account maintained for such trusts are shown in the following schedule: Date
Source or Payee
Paid Out
Received
Balance
6/12/72
$ 100.00
$ 100.00
6/13/72
Bing Management Company
45,000.00
45,100.00
6/13/72
Bing Construction Co.
$25,000.00
20,100.00
6/13/72
Bing Construction Co.
19,791.67
308.33
6/25/72
D. Gerald Bing (loan)
10,000.00
10,308.33
6/25/72
Title Ins. & Trust
10,000.00
308.33
9/5/72
D. Gerald Bing (loan)
10,000.00
10,308.33
9/5/72
D. Gerald Bing
4,877.00
5,431.33
9/5/72
Title Ins. & Trust
5,123.00
308.33
9/11/72
[Bank Charge]
4.14
304.19
10/20/72
Title Ins. & Trust
15,123.00
15,427.19
10/20/72
Bing Construction Co.
25,833.33
41,260.52
10/20/72
D. Gerald Bing (repayment)
20,000.00
21,260.52
10/27/72
First American Title
20,000.00
1,260.52
11/10/72
Bing Management Company
65,000.00
66,260.52
11/13/72
First American Title
15,000.00
51,260.52
11/17/72
Mentzer Diesel
49,465.76
1,794.76
12/20/72
Bing Construction Co.
2,328.50
4,123.26
12/31/72
D. Gerald Bing
$5,200.00 $
[1,076.74)
1/19/73
Bing Construction Co.
2,328.50
1,251.76
1/29/73
4,877.00
6,128.76
2/16/73
Bing Construction Co.
2,328.50
8,457.26
3/20/73
Bing Construction Co.
2,328.50
10,785.76
*45 On June 13, 1972, Bing Management Company contributed $45,000.00 to the pension and profitsharing plans. On the same day, the plans loaned $25,000.00 to Bing Construction Company and purchased a third-party obligation from Bing Construction Company in the amount of $19,791.67, leaving a balance of $308.33 in the trusts. The loan of $25,000.00 was repaid with interest of $833.33 on October 20, 1972.During this period, D. Gerald Bing made loans of $20,000.00 to the trusts without interest. On November 9, 1972, Bing Construction Company purchased a diesel generator from Mentzer Detroit Diesel, Inc., Sparks, Nevada, for $49,465.76. The purchase was financed through the First National Bank of Nevada. On November 17, 1972, Bing Construction Company executed an installment note payable to the bank in the amount of $55,884.00, which included principal and interest at 12 percent per annum, payable in monthly installments of $2,328.50. On the same day, Mr. Bing, as trustee of the pension and profit-sharing plans, purchased the note for $49,465.76.The installments were paid as due. The final installment became due and was paid on November 15, 1974. At the time that the loan of $25,000.00 *46 was made to Bing Construction Company, that corporation had cash on hand of $70,863.48. On November 9, 1972, at the time that Bing Construction Company purchased the diesel generator from Mentzer Detroit Diesel, Inc., that corporation had on deposit at the First National Bank of Nevada $183,975.76. For the calendar year ended December 31, 1972, the net worth of that corporation was shown as $1,067,213.29. The only other transaction of the pension and profit-sharing trusts during the fiscal year ended March 31, 1973, consisted of an investment to acquire an interest in certain real property known as the Apple Valley Subdivision. The initial funds were loaned to the trust by D. Gerald Bing without interest. The property was ultimately acquired and its development resulted in substantial earnings to the trust. Respondent does not rely on this transaction as a basis for disqualification of the plans. All of the employees of petitioner were participants in the pension and profit-sharing plans. D. Gerald Bing did not have the direction or formal consent of any of those participants with respect to the investments of the trust. However, in a small group such as this, most of *47 the participants knew what was being done. During the fiscal year ended March 31, 1973, Bing Management Company deducted $67,189.00 of the total of $110,200.00 contributed to the pension and profit-sharing plans.As of March 31, 1973, the loan of $25,000.00 to Bing Construction Company had been repaid with interest. Installments on the note of $55,884.00, secured by a chattel lien on the diesel generator, had been paid as due. The trust did not have outstanding any unsecured loans, and with the exception of the installment note secured by the diesel generator, there were no outstanding investments which the respondent does not concede were made exclusively for the benefit of the participants of the plan within the meaning of the statute. In his notice of deficiency, the respondent disallowed $32,251.00 of the deduction on account of the contribution made to the profit-sharing plan and $21,501.00 on account of the deduction of the contribution made to the pension plan.In explanation thereof, the respondent stated: It is determined that the Bing Construction Co., Inc. profit-sharing plan and the Bing Construction Co., Inc. pension plan do not meet the requirements for qualification *48 under Section 401(a), since these plans were not operated for the exclusive benefit of the employees or their beneficiaries. Accordingly, the allowable deduction for contributions to these plans is limited by law to that part of the contribution which is nonforfeitable. Since 20 percent of the contributions to both plans in the taxable year ended March 31, 1973 are, by definition, nonforfeitable your allowable deduction may not exceed this amount. You claimed a deduction of $40,314.00 for contributions to the profit-sharing plan and $26,876.00 for contributions to the pension plan. Therefore, $32,251.00 of the contributions to the profit-sharing plan and $21,501.00 of the contributions to the pension plan are determined to be unallowable and added to your taxable income. Profit-Sharing
Pension
Plan
Plan
Deduction claimed
$40,314.00
$26,876.00
Amount determined
8,063.00
5,375.00
allowable - 20%
Adjustment -
Increase in income
$32,251.00
$21,501.00
OPINION The petitioner filed its return on the basis of a fiscal year ending March 31. On April 17, 1972, petitioner adopted a pension plan and a profit-sharing plan for the benefit of its employees. *49 A set of forms were obtained for such purpose. Respondent acknowledges that the form of the plans and accompanying trust agreements conform to the requirements of section 401(a) in all respects except that upon a consideration of the investments made by the trusts during the taxable year ended March 31, 1973, the respondent determined that the trusts were not in fact organized for "the exclusive benefit" of petitioner's employees within the meaning of section 401(a). In support of this determination, respondent's brief states: It is respondent's position as set forth in Rev. Ruls. 69-494, 1969-2 C.B. 88; 73-380, 1973-2 C.B. 124; 73-282, 1973-2 C.B. 123, that the following criteria must be met before an investment is consistent with the exclusive-benefit-of-the-employee's requirement: (1) the cost must not exceed fair market value at time of purchase; (2) a fair return commensurate with the prevailing rate must be provided; (3) sufficient liquidity must be maintained to permit distributions in accordance with the terms of the plan; and (4) the safeguards and diversity that a prudent investor would adhere to must be present. The requirement *50 that the trust be administered "for the exclusive" benefit of the employees is not to be construed literally.It does not preclude investment by the trustee in securities or obligations of the employer. Time Oil Co. v. Commissioner,258 F.2d 237 (9th Cir. 1958); Rev. Rul. 69-494, 1969-2 C.B. 88. In fact, it is recognized that under certain conditions such investments might be of greater benefit to the employee than would be an "outside" investment. Petitioner argues that the investments in question met the criteria of Rev. Rul. 69-494, supra. We agree. For purposes of decision, the loan of $25,000.00 by the trust to Bing Construction Company may be disregarded. As D. Gerald Bing testified, this represented an accommodation to the trusts.It was a temporary short-term loan intended to provide some income for the trusts. Bing Construction Company did not need the money. During the same period, D. Gerald Bing loaned the trusts $20,000.00 without interest. The acquisition of the $55,884.00 note, secured by the diesel generator, meets all of the criteria of the regulations. It was an ordinary commercial transaction. There can be *51 no doubt that the First National Bank of Nevada would have made the loan on the same basis. It resulted in a higher rate of interest for the trusts than could have been obtained if the funds had been invested in any other manner. Finally, the respondent acknowledged that the investment in the Apple Valley Subdivision meets his criteria. This was the only on-going or long-term investment made by the trusts. Apparently the investment was eminently successful. Due to the foregoing, it is our opinion that the pension and profit-sharing plans were operated exclusively for the benefit of the employees and qualify under section 401 and section 405. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩