TIONESTA SAND & GRAVEL, INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 704–78.     Filed January 31, 1980.

*Hilary G. Lynch* and *Richard R. Carr*, for the petitioner.
*Edward J. Laubach, Jr.*, for the respondent.

## OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $9,960.59 in petitioner's Federal income tax for its taxable year ended February 28, 1973. Due to a concession by petitioner, the sole issue presented for decision is whether petitioner's profit-sharing plan and trust qualified under section 401(a)[1] during its fiscal year ended February 28, 1973.

All the facts are stipulated.

Petitioner is a Pennsylvania corporation, with its principal place of business in Hawthorn, Pa. It files its Federal income tax returns on the basis of a fiscal year beginning on March 1 and reports its income and expenses on the accrual method of accounting. For its fiscal year ended February 28, 1973, petitioner filed its return with the Internal Revenue Service Center, Philadelphia, Pa. On that return, petitioner claimed a deduction in the amount of $30,970.89 as a contribution to its profit-sharing plan.

The contribution was made under a profit-sharing plan and trust agreement adopted on February 28, 1968. During the 1973 fiscal year, the two trustees of the trust, Joe F. Sherman and Joseph J. Sherman, owned 430 and 420 shares, respectively, of the 980 outstanding shares of petitioner. These individuals were, respectively, petitioner's treasurer and president. The remaining

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

130 shares were owned by seven shareholders, with none holding more than 40 shares.

Under the profit-sharing trust agreement, as in effect for the 1973 fiscal year, petitioner was to make annual contributions out of profits in amounts which were discretionary with petitioner's board of directors. The employer had no obligation to continue to make contributions or to maintain the plan for any specified length of time. The interest of a participant in the trust was forfeitable until it became nonforfeitable pursuant to the agreement. Vesting was at the rate of 10 percent for each year of participation, except that a participant could be fully vested with less than 10 years of participation in case of death, severance of employment due to permanent total disability, early retirement after age 55, or retirement at or after retirement age. Forfeitures of nonvested interests of participants were to be allocated for the benefit of participants remaining in service. Article IX, paragraph 3, of the trust agreement provided in pertinent part as follows:

The plan and trust hereby created shall terminate upon the happening of any of the following events:

(A) Delivery to the trustee of a notice of termination executed by the employer specifying the date as of which the plan and trust shall terminate.

(B) Adjudication of the employer as a bankrupt or general assignment by the employer to or for the benefit of creditors or dissolution of the employer.

(C) If the State the laws of which shall control the operation of the plan and trust, shall not have adopted legislation exempting the plan and trust from the operation of the rule against perpetuities, the plan and trust hereby created shall terminate at the expiration of 21 years after the death of the last of the original participants in the plan.

Upon such termination of the plan and trust * * * each former participant, and each beneficiary of a deceased participant shall be entitled to receive any amounts then credited to his account in the trust fund. * * *

The trust agreement contained no provision for full vesting of participants' interest on complete discontinuance of contributions.

Prior to 1976, petitioner had not requested a determination letter with respect to the 1968 plan and trust. In July 1976, petitioner submitted an application to the Internal Revenue Service (Service) for a determination that the plan qualified under section 401(a). The Service responded in August 1976 with a request for an executed copy of plans, coverage information for the years 1968 through 1975, and balance sheets for all years.

Petitioner did not comply with this request. In his notice of deficiency dated October 17, 1977, respondent determined that a deduction of $30,970.89 as a contribution to a profit-sharing plan was not allowable because petitioner had not shown that the contribution was made, or, if made, that the plan and trust qualified under sections 401, 402, 404, and 501.

On June 29, 1978, after filing the petition in this case, petitioner submitted to the Service an "Amended and Restated Employees' Profit Sharing Plan" which had been executed on June 26, 1978. The 1978 amended and restated plan, by its terms, was made effective March 1, 1976. After petitioner proposed certain amendments submitted in its representative's letter dated February 2, 1979, this plan received a favorable determination letter dated April 9, 1979. The favorable determination letter contained a caveat which stated in part:

This Determination applies to the plan as amended on 6–26–78 for plan years beginning 3–1–76 and thereafter. This determination does not apply to the plan as initially adopted on February, 1968 for plan years beginning before 3–1–76.[2]

Respondent has narrowed his contentions here to two grounds. He first argues that the plan does not qualify because it provides for full vesting only upon the three types of termination listed in article IX of the agreement, quoted above, rather than, in accordance with section 401(a)(7), upon any type of termination or upon complete discontinuance of contributions. Respondent concedes that the plan has not been terminated and that contributions have not been discontinued but maintains that the failure of the vesting provisions to meet the requirements of section 401(a)(7) is nonetheless fatal to the claimed exemption. Respondent also states that the plan, as operated during the year in issue, discriminates in favor of petitioner's shareholder-employees as to both contributions and reallocation of forfeitures. Since we agree with respondent's first contention and decide the case on that ground, we do not reach the second issue.[3]

Section 404(a) allows an employer a limited deduction for

---

[2]In a letter dated Dec. 7, 1978, an appeals officer objected to the plan in its original form because, in part, the plan contained no provision requiring full vesting upon termination or upon complete discontinuance of contributions or preventing discrimination in the method of allocating forfeitures. The letter further stated that such plan defects, coupled with petitioner's failure to apply for a determination letter before June 1978, precluded retroactive amendment of the plan.

[3]Petitioner has also advanced certain arguments with respect to the caveat of the April 1979 determination letter. Because these arguments do not relate to the status of the plan in 1973, we do not discuss them.

contributions made to a profit-sharing plan if, in pertinent part, the profit-sharing trust is exempt under section 501(a). The requirements for such exemption are set forth in section 401(a).

Paragraph (7) of section 401(a), in the form effective during the year before the Court, was added by section 2(2) of the Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. 87–792, 76 Stat. 809–810, and stated in pertinent part that a trust would not qualify—

unless the plan of which such trust is a part provides that, upon its termination or upon complete discontinuance of contributions under the plan, the rights of all employees to benefits accrued to the date of such termination or discontinuance, to the extent then funded, or the amounts credited to the employees' accounts are nonforfeitable.[4] * * *

The plan provision required by this paragraph must be express. Sec. 1.401–6(a)(1), Income Tax Regs.[5]

The regulations enumerate situations which, depending on the facts and circumstances, could constitute terminations or complete discontinuances of contributions within the meaning of section 401(a)(7). Thus, a termination may include the case of employees discharged when the employer is winding up his trade or business. Sec. 1.401–6(b)(1), Income Tax Regs. A partial termination, which is encompassed by the word "termination," might occur in situations in which a group of previously covered employees are excluded due to a plan amendment or discharge from employment, in which benefits or employer contributions are reduced, or in which less liberal eligibility or coverage requirements are introduced. Sec. 1.401–6(b)(2), Income Tax Regs. Furthermore, a complete discontinuance of contributions may describe a case in which the employer contributes to the plan but only in insubstantial amounts. Sec. 1.401–6(c)(1), Income Tax Regs. The variety of situations mentioned in the

---

[4]Par. (7) was substantially rewritten by the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 829, applicable generally to taxable years beginning after Dec. 31, 1975.

[5]Sec. 1.401–6 Termination of a qualified plan.

(a) *General rules.* (1) In order for a pension, profit-sharing, or stock bonus trust to satisfy the requirements of section 401, the plan of which such trust forms a part must expressly provide that, upon the termination of the plan or upon the complete discontinuance of contributions under the plan, the rights of each employee to benefits accrued to the date of such termination or discontinuance, to the extent then funded, or the rights of each employee to the amounts credited to his account at such time, are nonforfeitable. * * *

regulations is consistent with the legislative intent to preclude employer manipulation of forfeitable plans.[6]

Petitioner's trust agreement expressly provides for full vesting only upon three specific types of termination mentioned in article IX, paragraph 3, quoted above. Hence, under petitioner's plan, an event which constitutes either another type of termination or a complete discontinuance of contributions would not be accompanied by full vesting. Each of the situations mentioned in the regulations, summarized above, could occur independently of the three events outlined in the trust agreement. It is, therefore, clear that the plan and trust do not meet the requirements of section 401(a)(7).

Maintaining that a discontinuance of contributions is a type of termination, petitioner denies that the absence of the section 401(a)(7) words, "complete discontinuance of contributions," constitutes a defect in the plan. Even if we agreed with petitioner, this argument would not support its case. Under the plan, full vesting not only does not occur upon a complete discontinuance of contributions, but rather takes place only upon one of three specified types of terminations. In contrast, section 401(a)(7) requires full vesting upon the plan's termination, a word which, as defined under the regulations discussed above, has a broader scope than under the vesting provisions in petitioner's trust agreement.

Petitioner relies upon certain revenue rulings issued before enactment of section 401(a)(7). However, these rulings state not that a discontinuance of contributions is a termination but only that it "is in effect a termination of the plan except that the formal steps to accomplish such result are not taken." Rev. Rul. 61–157, 1961–2 C.B. 67, 89; Rev. Rul. 57–163, 1957–1 C.B. 128, 147–148; Rev. Rul. 55–186, 1955–1 C.B. 39.[7] While termination of the plan would always cause a discontinuance of contributions, a cessation of contributions could occur without an actual termination of the plan. Furthermore, to construe the word "termination" as used in section 401(a)(7) as encompassing the term "complete discontinuance of contributions" is to find the latter

---

[6]In order to prevent abuses resulting from terminations of forfeitable plans, Congress added paragraph (7) to sec. 401(a) in 1962. The provision precluded "the possibility that contributions which have been deducted for income-tax purposes may revert back to the employer, or owner-employee." H. Rept. 378, 87th Cong., 1st Sess., 1962–3 C.B. 261, 268–269.

[7]All of these rulings have been declared obsolete. Rev. Rul. 72–488, 1972–2 C.B. 649; Rev. Rul. 72–92, 1972–1 C.B. 408.

clause redundant. Such a construction conflicts with the holding in *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307–308 (1961), in which the Supreme Court stated:

The statute admits a reasonable construction which gives effect to all of its provisions. In these circumstances we will not adopt a strained reading which renders one part a mere redundancy. * * *

Also, section 1.401–6(a)(1), Income Tax Regs., quoted in note 4 *supra*, calls for an express provision in the plan that full vesting take place upon termination or upon complete discontinuance of contributions. The regulations further define these two contingencies to cover a variety of events. However, the only express provision of the plan relevant to this issue, quoted above, provides for full vesting only upon occurrence of one of three events; these three types of terminations neither separately nor together encompass the various situations mentioned in the regulations.[8]

Next, petitioner, in effect, concedes that the plan provision does not comply with section 401(a)(7) but notes respondent's concession that the plan was not terminated, that contributions were not discontinued, and that the plan provision now, in effect, accords with the statutory requirements. Since the defective provision of the plan never became operative and cannot be applied in the future, petitioner argues that denial of qualified status to the plan and trust would not carry out the legislative purpose behind section 401(a)(7). Moreover, according to petitioner, that section is aimed at plans established by an owner-employee with three or fewer employees; petitioner is not such an employer.

In our view, this argument does not take into account the manner in which Congress sought to prevent abuses of forfeitable plans. Although discussing the abuse problem in the context of a plan established by an owner-employee with no more than three employees, the House report expressly states that section 401(a)(7) applies to all pension plans. H. Rept. 378, 87th Cong., 1st Sess. (1961), 1962–3 C.B. 261, 275. Furthermore, the congres-

---

[8]Although petitioner does not directly argue that the regulation is void, it would, in effect, have us invalidate all of the regulations mentioned above. Because this Court possesses no power to revise the regulations (*United States v. Correll*, 389 U.S. 299, 307 (1967)), we must sustain a regulation which is not "unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Co.*, 333 U.S. 496, 501 (1948). In our view, the regulations set forth a reasonable interpretation of the statute and its purpose.

sional purpose of preventing abuses explains the addition in paragraph (7) of section 401(a) of the requirement that the plan expressly provide for full vesting upon termination of the plan or upon complete discontinuance of contributions. That paragraph focuses on neither the existence of a tax avoidance motive on the part of an employer nor the actual occurrence of an event constituting either a termination of a plan or a complete discontinuance of contributions. Hence, the fact that the defective plan provision did not become operative does not mean that the plan meets the requirements of section 401(a)(7). Accord, *Gillis v. Commissioner*, 63 T.C. 11, 17 (1974) (compliance with requirements set forth in section 401(a)(6) rather than good faith intentions controlling).

Closely related to this second argument is petitioner's criticism of what it terms respondent's "mindless devotion to hypertechnicality" or "monstrous pursuit of the picayune." In petitioner's view, this Court should not demand compliance with the statutory language but rather should balance what petitioner deems the minimal harm caused by a defective plan provision never brought into operation against the harm to plan participants resulting from a holding that the plan is not qualified. In support of this argument, petitioner cites *Time Oil Co. v. Commissioner*, 258 F.2d 237 (9th Cir. 1958), remanding 26 T.C. 1061 (1956), and *Community Services, Inc. v. United States*, 191 Ct. Cl. 76, 422 F.2d 1353 (1970).

Yet, this Court has held that a plan with defective provisions which the employer attempted to amend retroactively did not become qualified for years prior to that in which the amendments were adopted. *Mendenhall Corp. v. Commissioner*, 68 T.C. 676 (1977). In its findings of fact, the *Mendenhall* Court noted provisions in the original plan which the Commissioner argued were objectionable as well as absence of provisions argued to have been required by the statute. One of the missing provisions was the one at issue here, i.e., the lack of a provision for vesting upon termination or upon complete discontinuance of contributions. With respect to each of the plan's alleged shortcomings, the Court further found that the defective provision had not been put into effect. *Mendenhall Corp. v. Commissioner, supra* at 678-679. Concluding that the plan in its original form clearly did not qualify, the Court refused to hold that the plan was

entitled to qualified status because plan defects were never brought into operation.[9] By amending the plan effective March 1, 1976, petitioner did not purport to cure the provision defects at issue for the taxable year 1973. Accordingly, as the *Mendenhall* case indicates, the plan fails to satisfy the requirements of section 401(a) during that year.

In our view, *Time Oil Co. v. Commissioner, supra,* and *Community Services, Inc. v. United States, supra,* are distinguishable from the instant case. The plan in *Time Oil* had received a favorable determination by the Commissioner. Hence, there was no dispute as to whether the plan provisions met the statutory requirements. Indeed, the court expressly stated (258 F.2d at 238) that absent the favorable determination, it might have held for the Commissioner. Because the plan had not been operated in accordance with plan provisions, the Commissioner argued that it failed to satisfy the requirement that trust funds be used for the exclusive benefit of the employees or their beneficiaries. Noting the Commissioner's practice of approving plans under which the employer obtained indirect benefits, the Ninth Circuit refused to construe literally the statutory term "exclusive benefit" and thus to disqualify the plan if deviations from its provisions produced only a minimal increase in benefits to the employer. It was in the context of this issue that the court proceeded to balance the relative benefits to employer and employees caused by the deviations from plan provisions. Here, the plan has not received a favorable determination. Furthermore, the balancing test proposed in *Time Oil* is inapplicable to the different issue before us.

In *Community Services*, the Court of Claims rejected the Commissioner's position that, under the plan and trust, trust funds could be diverted to the use of the employer-taxpayer. Since the plan incorporated by reference section 401(a), and the trust instrument allowed no amendment which would permit use of funds except for the exclusive benefit of employees or their beneficiaries, the court held that the trust satisfied the requirement imposed by section 401(a)(2) that trust funds be used for

---

[9]In *Mendenhall Corp. v. Commissioner,* 68 T.C. 676, 680–682 (1977), the Court addressed the issue whether the defective provisions were retroactively cured by amendments which had been executed after the taxpayer applied for a determination letter. We did not permit retroactive cure under the holding in *Aero Rental v. Commissioner,* 64 T.C. 331 (1975), because the taxpayer, which had waited more than 5 years before applying for a determination that the plan satisfied the requirements of sec. 401(a), failed to exercise reasonable diligence in attempting to obtain a favorable determination.

the exclusive benefit of employees or their beneficiaries. Section 401(a)(7) was not in effect during the taxable years there at issue (422 F.2d at 1358 n. 5); the court, therefore, did not consider the impact of that section on the issue before it. To be sure, the trust agreement here contains "exclusive benefit" language similar to that in *Community Services*. Because that case was not decided under section 401(a)(7), its holding has no bearing on our decision of the instant case.

Since the trustees are also shareholders, directors,[10] and employees participating in the plan, petitioner contends that the State law principles of fiduciary duty prevent them from acting in their own interests rather than in the interests of the plan participants. In petitioner's view, the trustees could not attempt to terminate the plan by means other than those specified in article IX, paragraph 3, without being subject to liability for breach of fiduciary duty under State law.

This argument is not persuasive. As we have explained, the plan provision is defective whether or not the plan was in fact terminated or contributions actually discontinued. Furthermore, petitioner's citations of cases discussing the general principle of fiduciary duty provide no basis for a conclusion that the trustees, in their capacities of corporate directors and officers, could not bring about one or more of the events which constitute a termination or complete discontinuance of contributions.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[10]The record indicates that on June 26, 1978, the two trustees were two of the three members of the board of directors.