*Decision will be entered under Rule 155.*

MAURICE G. BOLINGER AND ZENITH A. BOLINGER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MAURICE G. BOLINGER, JR., AND RITA BOLINGER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9508–77, 9509–77. Filed December 23, 1981.

*John D. Brown*, for the petitioners.
*Warren R. Calvert*, for the respondent.

OPINION

WILBUR, *Judge*: Respondent determined deficiencies in petitioners'[1] Federal income tax returns as follows:

| | Taxable year | | |
| --- | --- | --- | --- |
| | *1971* | *1972* | *1973* |
| Maurice G. and Zenith A. Bolinger | $209.74 | $456.43 | $469.17 |
| Maurice G., Jr., and Rita Bolinger | 231.82 | 555.51 | 704.40 |

The sole issue presented for our decision is whether the Pension Plan and Trust Agreement adopted by Gladstone Laboratories, Inc., constituted a qualified plan under section 401[2] for the taxable years 1971, 1972, and 1973. If the plan was not so qualified, deductions claimed by Gladstone for contributions made to the plan during those years were improper. Accordingly, there would be an increase to the corporation's undistributed taxable income, which, in turn, increases the petitioners' taxable income for each of those years (Gladstone being a subchapter S corporation).

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and the attached exhibits are incorporated herein by this reference. A summary of the relevant facts is set forth below.

Maurice G. and Zenith A. Bolinger filed joint Federal income tax returns for the taxable years 1971, 1972, and 1973. At the time of the filing of the petition in this case, the petitioners were residents of Cincinnati, Ohio.

Maurice G., Jr., and Rita Bolinger filed joint Federal income tax returns for the taxable years 1971, 1972, and 1973. At the

---

[1]These cases were consolidated for briefing and opinion.

[2]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

time of the filing of the petition in this case, the petitioners were residents of Cincinnati, Ohio.

Gladstone Laboratories, Inc. (hereinafter Gladstone), is a corporation organized under the laws of Ohio and taxed under the provisions of subchapter S of the Internal Revenue Code. During the taxable years here in issue, petitioners Maurice G. Bolinger and Maurice G. Bolinger, Jr., each owned 50 percent of the stock of Gladstone.

On August 26, 1965, Gladstone entered into a written Pension Plan and Pension Trust Agreement. This agreement was amended on December 31, 1971. At no time during the taxable years here in issue (1971 through 1973) did the trust agreement provide that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan, nor did it contain a provision requiring that an employee's average annual compensation must be computed as his annual compensation averaged over a period of at least 5 consecutive years.

In actual operation from the date of the plan's inception through the taxable year 1973, all forfeitures were used to reduce contributions to the plan by the employer, and no amounts forfeited were used or applied to increase the benefits any employee would otherwise receive under the plan. Furthermore, no employee covered by the plan retired under the plan during this period of time.

In November of 1974, Gladstone submitted to the Service an application for a determination of the qualified status of its plan, no application having been submitted prior to that time.[3] On January 28, 1975, a favorable determination was made by the respondent, applicable only to the years 1974 and 1975. On May 16, 1975, the respondent revoked his prior favorable determination on the ground that the data submitted in the application was outdated and did not properly reflect the current status of the plan.

In December of 1975, a second amendment to the plan was executed, apparently in the hope that it would cure the defects in the existing plan. This amendment states that it is to be

---

[3]The request was dated Oct. 28, 1971. There is no explanation provided by the parties as to the reasons for the delay in submitting the application to the respondent.

effective as of August 26, 1965, the date of the original adoption of the plan.

On its Federal income tax returns, Gladstone claimed deductions for contributions made to the plan of $2,207.70, $4,149.32, and $3,612.32 for the tax years 1971, 1972, and 1973, respectively. On June 9, 1977, statutory notices of deficiency were sent to the respective petitioners based on the respondent's disallowance of these deductions by Gladstone, which, in turn, resulted in an understatement of income by the petitioners on their individual income tax returns due to the operation of the provisions of subchapter S.[4]

The parties agree that the sole question presented is whether Gladstone is entitled to take the deductions claimed in 1971, 1972, and 1973 for contributions made to its employee pension plan during those years. It is further agreed that the deductions in issue turn on whether the plan was qualified during those years.

Section 404(a)(1)(A) permits an employer who makes contributions to a qualified pension trust to deduct these contributions on its Federal income tax return. Respondent takes the position that the Gladstone pension plan fails to qualify because the requirements of section 401(a) have not all been met. Petitioners contend that those provisions are effectively satisfied; or, alternatively, that any defects were cured retroactively by the 1975 amendment. We agree with the respondent.

Section 401(a)(8) provides that "A trust forming part of a pension plan shall not constitute a qualified trust under this section unless the plan provides that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan." This requirement is amplified by the regulations which state in pertinent part:

the plan must *expressly* provide that forfeitures arising from severance of employment, death, or for any other reason, must not be applied to increase the benefits any employee would otherwise receive under the plan at any time prior to the termination of the plan or the complete discontinuance of employer contributions thereunder. The amounts so forfeited must be used

---

[4]A subch. S corporation is not subject to tax on its corporate income. Sec. 1372(b)(1). However, each shareholder must include in his gross income his pro rata share of the corporation's undistributed taxable income. Sec. 1373(b). Thus, a denial of a deduction to Gladstone would result in an understatement of income by the petitioners.

as soon as possible to reduce the employer's contributions under the plan. * * * [Sec. 1.401–7(a), Income Tax Regs. Emphasis added.]

The parties have stipulated that during the years here in issue, the pension agreement failed to specifically provide that forfeitures must not be applied to increase the benefit any employee would otherwise receive under the plan. While conceding that the plan did not make specific provision as to the use of forfeitures, petitioners urge that a thorough reading of the plan clearly shows that forfeitures could not possibly be applied to increase the benefits any employees would otherwise receive. Their argument is predicated upon Rev. Rul. 67–68, 1967–1 C.B. 87 which, in discussing section 1.401–7(a), Income Tax Regs., concludes:

It is not necessary for a pension plan, intended to qualify under section 401(a) of the Code, to contain a specific statement regarding the application of forfeitures, provided that the plan makes it otherwise clear that forfeitures must not be applied to increase the benefits any employee would otherwise receive thereunder.

Despite the respondent's broad interpretation of the regulations,[5] the agreement as a whole fails to make it clear that forfeitures cannot be applied to increase the benefits any employee would otherwise receive.

Under the Gladstone pension agreement, retirement benefits are to be provided to each participant based on a fixed percentage of his basic compensation. In order to provide these benefits, a life insurance contract is to be purchased for each participant which provides a death benefit prior to the normal retirement date equal to 100 times the monthly benefits to which the employee is entitled. The entire cost of the plan is to be borne by the employer (Gladstone). To take into account future increases in compensation, the plan provides for an annual review and recomputation of benefits. Subject to a de minimis exception, additional life insurance contracts are required to be purchased to take into account such changes in benefits.

---

[5]The regulation requires an express provision. Express has been defined as "clear; definite; explicit * * * made known distinctly and explicitly, and not left to inference. * * * The word is usually contrasted with 'implied.' " Black's Law Dictionary 691 (4th ed. 1968). Yet the ruling cited by the petitioners would appear to allow sec. 401(a)(8) to be satisfied by inference from the agreement, as long as the inference is clear.

Finally, the agreement creates an auxiliary fund for the purpose of purchasing, at retirement, an additional insurance contract in order to pay any increased income benefits to which the participant is entitled. The fund is to be accumulated prior to retirement, from contributions made by the employer, in amounts calculated as necessary by the trustees from information as to rates of interest and mortality supplied by the employer. Unlike the contributions discussed above which call for the purchase of separate insurance contracts for each employee, the amounts in the auxiliary fund are not earmarked for any particular participant prior to his retirement.

Article IX of the agreement deals specifically with termination of employment other than by retirement. Upon termination, the contracts on the participant's life are to be turned over to the participant free of the agreement. However, the participant is not entitled to any interest in the auxiliary fund.

As the policies turned over to the participant cannot be used to provide increased benefits, the question resolves itself into potential uses for the amounts forfeited in the auxiliary fund.[6] We have searched fruitlessly for a provision in the agreement which would prevent the forfeited share in the auxiliary fund from being used to purchase additional retirement income for the remaining participants. Nor is there any provision which would require that the forfeited share in the auxiliary fund be used to reduce the employer's contributions.

Petitioners argue that the agreement provides fixed levels of benefits for the participants, and, therefore, it is clear that the forfeitures cannot go to them. The agreement, however, does not state that the amount the participants are *entitled* to under the computation of benefits is the maximum which can be paid to them. The plan is ambiguous or silent as to many aspects of the auxiliary fund, including the use of forfeitures, and it is impossible for us to conclude from our review of the plan that an application of forfeitures to increase the benefits of the remaining participants was prohibited. In any event, the

---

[6]We assume that the payments by the employer on account of a participant's accrual of benefits during the year are not made to the trustees to purchase the contracts until after the end of the year. Consequently there would be no moneys forfeited by the participant other than those in the auxiliary fund.

clarity demanded by the regulations as interpreted by the revenue ruling[7] is totally lacking in this agreement. See *Comprehensive Designers International, Ltd. v. Commissioner*, 66 T.C. 348, 358 (1976).

Petitioners alternatively argue that should we find that the plan failed to qualify under the original agreement, we should nonetheless give the 1975 amendment its stated retroactive effect (back to 1965), thus curing the defects in the plan during the taxable years in question. Assuming, arguendo, that the 1975 amendment meets the requirement of section 401(a)(8), as well as the other objections raised by the respondent, we still cannot give retroactive effect to this amendment.[8]

Section 401(b) and the regulations thereunder allow certain retroactive changes in the plan to be made in order to qualify under section 401(a). Section 401(b) provides:

(b) CERTAIN RETROACTIVE CHANGES IN PLAN.—A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes for the whole of such period.[9]

Petitioners here are unable to qualify under this section as the 1975 amendment was not made prior to the time prescribed for

---

[7]The instant case is distinguishable from the two situations presented in the revenue ruling. The first of these involves a plan which provides that forfeitures will be used to reduce the employer's required contributions. The second situation involves a group annuity contract wherein employer contributions are not allocated to any specific participant but are determined by reference to accrued benefits. In such a situation, employer contributions would perforce be reduced by any forfeitures as to a specific employee. What is common to both of those situations is that they contain provisions which require the use of forfeitures to reduce the employer's future contributions, thus effectively preventing the use of the forfeitures to increase benefits. No similar clause appears in, nor can be implied from, the agreement here in question.

[8]As sec. 401(a)(8) states that a trust is not qualified unless its requirements are met, we need go no further. Thus, we do not consider the respondent's contention that the agreement violated sec. 401(a)(4) and sec. 1.401–4(c)(1), Income Tax Regs., by failing to properly define the term "annual compensation."

[9]See also sec. 1.401(b)–1, Income Tax Regs.

filing the return of the employer for the taxable year in which the plan was adopted, and no extensions were granted by the respondent.[10]

We have, however, held that section 401(b) is merely a "safe harbor" which guarantees that if a plan is amended within the time frame set out in the statute, retroactive effect must be given to the amendment. *Aero Rental v. Commissioner*, 64 T.C. 331, 341 (1975). Under certain circumstances, an amendment made outside of the statutory time frame may be given retroactive effect. In order that one might qualify for such treatment, two conditions must be satisfied: (1) No circumstances arose which caused the objectionable provisions of the plan to be called into operation, and (2) the employer exercised reasonable diligence in attempting to obtain a favorable determination letter from the Internal Revenue Service. *Aero Rental v. Commissioner*, supra; *Engineered Timber Sales, Inc. v. Commissioner*, 74 T.C. 808 (1980); *Oaktron Distributors, Inc. v. Commissioner*, 73 T.C. 182, 190 (1979); *Jack R. Mendenhall Corp. v. Commissioner*, 68 T.C. 676, 681 (1977).

Assuming, without deciding, that the first condition was met here, petitioner has failed to satisfy the second condition. Nine years and 2 months elapsed from the date the plan was originally adopted until a request for a determination letter was submitted to the Internal Revenue Service.[11] This can hardly be considered an "exercise of reasonable diligence." In *Aero Rental*, a determination letter was sought within 6 months after the adoption of the plan. We subsequently held that a delay of 5 years and 5 months was too long to come within the holding of *Aero Rental. Jack R. Mendenhall Corp. v. Commissioner*, supra at 682. See *Tionesta Sand & Gravel, Inc. v. Commissioner*, 73 T.C. 758, 765 n. 9 (1980), affd. 642 F.2d 444 (3d Cir. 1981).

It is true, as petitioners point out, that neither the Code nor

---

[10]The regulations contain a special extension of the remedial amendment period for plans whose remedial amendment period began prior to Sept. 2, 1974. Sec. 1.401(b)–1(d)(5), Income Tax Regs. This provision does not apply here as Gladstone did not file a request for a determination letter that was timely under that regulation. See sec. 1.401(b)–1(d)(5)(i), Income Tax Regs.

[11]Although the request was dated Oct. 28, 1971, it has been stipulated that the application was not submitted until November of 1974, and that no prior application was made.

the regulations require an advance determination of qualified status in order to obtain the desired tax benefits. But this ignores the theory behind affording relief from the strict statutory rules for amendment. As we noted in *Aero Rental v. Commissioner, supra* at 342, the Ways and Means Committee report relating to the amendment of section 401(b) provides:

It is expected that the regulations will provide for extension for reasonable cause, such as the filing of a bona fide request for a determination by the Service that a plan or plan amendment is qualified. H. Rept. No. 93–807, 93d Cong., 2d Sess. 166 (1974); see also S. Rept. No. 93–383, 93d Cong., 1st Sess. 147 (1973). [1974–3 C.B. (Supp.) 401 and 226, respectively.]

Thus, while strictly speaking no determination letter is required in order to achieve qualified status under section 401(a), Congress clearly contemplated that an extension for reasonable cause would generally involve delay occasioned by a rulings request or some comparable problem, and the regulations in significant part reflect this philosophy. See sec. 1.401(b)–1(d)(5), Income Tax Regs. Here the delay, which is clearly impermissible under prior cases, can by no stretch of the imagination be attributed to a request for a determination letter or any comparable phenomena. Here the petitioners took their chance over nearly a 10-year period that they would meet the requirements of the statute, and there is no authority for allowing an extension of time to amend the plan retroactively.

*Decisions will be entered for the respondent.*