DEWEY D. HALLIGAN and DORIS A. HALLIGAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Halligan v. Commissioner
Docket Nos. 7418-83, 7419-83, 7420-83, 7421-83.
United States Tax Court
T.C. Memo 1986-243; 1986 Tax Ct. Memo LEXIS 362; 51 T.C.M. (CCH) 1203; T.C.M. (RIA) 86243; 7 Employee Benefits Cas. (BNA) 2075; June 17, 1986. Dean R. Westly, for the petitioners. David L. Lau, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Docket No.
Petitioners
Taxable Year
Deficiency
7418-83
Dewey D. Halligan and
1977
$5,185
Doris A. Halligan
1978
15,586
1979
45,537
7419-83
Hepco, Incorporated
1978
49,955
1979
107,494
7420-83
Hepco, Inc. Profit
1978
116
Sharing Plan and Trust
1979
771
7421-83
Clarence Nelson
1978
170
1979
592
*366 The issues for decision are: (1) Whether the amounts of compensation paid to Dewey and Doris Halligan by Hepco, Inc. during 1978 and 1979 were reasonable, and (2) Whether the trust forming a part of the Hepco, Inc. Profit Sharing Plan and Trust was a qualified trust under section 401(a)[2], and thus was tax exempt under section 501(a), for its plan years ended March 31, 1978 and 1979. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Dewey and Doris Halligan, husband and wife, resided in San Jose, California at the time they filed their petition. Hepco, Inc. is a California corporation which was organized in May, 1974. All the stock of Hepco, Inc. is owned by Dewey and Doris Halligan. At all relevant times, the corporation's principal place of business was in Sunnyvale, California. Hepco, Inc. adopted the Hepco, Inc. Profit Sharing Plan (the Plan) and Trust (the Trust) on March 27, 1975. Dewey and Doris Halligan *367 were the Trustees of the Trust; the Trust's fiscal year end was March 31.The Plan's principal office at all relevant times was in Sunnyvale, California. Clarence Nelson (Nelson) was an employee of Hepco, Inc. during 1978 and 1979. Nelson resided in Sunnyvale, California at the time he filed his petition. In 1969, while working for Memorex Corporation, Dewey conceived and developed a machine which would trim and form the wire leads for various electronic components used in the assembly of printed circuit boards. After receiving a letter from Memorex which permitted Dewey to exploit his investion, Dewey applied for, and obtained in 1971, a patent on this machine. In 1972, Dewey started his own business in his garage, constructing machinery for use in the manufacture of printed circuit boards. He named the business Hepco, an acronym for Halligan Engineering Products Company. In 1972, Dewey obtained a patent on an automatic transistor lead forming and cutting machine; and in 1974, he obtained a patent on a dual in-line pack lead forming and cutting machine. By 1973, Hepco had generated enough profits to enable the business to move from the Halligans' garage. In 1974, Dewey *368 transferred all the assets [3] of his sole proprietorship to Hepco, Inc. (hereinafter referred to as Hepco) in exchange for all 4,334 shares of its outstanding capital stock and Hepco's promissory note in the amount of $50,000. [4] Dewey was the president, treasurer, and chairman of the board of directors of Hepco. Doris was Hepco's vice-president, secretary, and a member of its board of directors. 1. Reasonable Compensation
Dewey performed the executive duties of Hepco. He marketed Hepco's machines, attended trade shows, managed its production, custom designed machines to fit the needs of Hepco's customers, and handled post-sale adjustments to the machines and customer complaints. His corporate duties occupied almost all of his time; he worked *369 evenings and weekends. He had no hobbies, belonged to no social clubs and rarely took vacations. Doris was Hepco's bookkeeper. Her duties included posting and collecting the corporation's accounts receivable, paying its bills, reconciling bank statements, and preparing the corporation's payroll. She assisted Dewey in preparing for trade shows (but did not attend them) and formulated advertisements for Hepco's machines. Because Doris had to care for her 12 year old daughter, she performed most of her corporate duties at home. Hepco engaged the services of an accounting firm which established an accounting system for Hepco, reviewed its books, and prepared its tax returns. During the first few years of Hepco's existence, Dewey and Doris were its only employees. Thereafter, the business grew and others were hired. As the business grew, so did Dewey's and Doris' salaries. Dewey and Doris received bonuses near the end of Hepco's fiscal year (March 31st). Prior to May 31, 1978, no formula was used for determining the amount of bonus paid. After May 31, 1978, a formula was established to determine Dewey's bonus, but not that of any other employee of Hepco. Dewey's bonus was set *370 at 25 percent of Hepco's net profits. The following is a summary of Hepco's gross receipts, taxable income, and retained earnings for the fiscal years ended March 31, 1975 through and including March 31, 1979: Fiscal Year
Gross
Taxable
Retained
Ended March 31
Receipts
Income
Earnings
1975
$142,878
$19,943
$19,943
1976
142,779
19,543
35,188
1977
393,563
105,402
136,565
1978
763,633
212,848
313,340
1979
1,005,246
258,117
417,182
Since its inception, Hepco has declared but one dividend, which was on May 31, 1978 in the amount of $1 per share. The total dividend payment was thus $4,334. The following summarizes the amounts of base salaries and bonuses paid to Dewey and Doris during the fiscal years ended March 31, 1975 through and including March 31, 1979: Dewey
Doris
Fiscal Year
Base
Base
Ended March 31
Salary
Bonus
Total
Salary
Bonus
Total
1975
$30,000
$10,000
$40,000
$10,000
$2,000
$12,000
1976
25,557
25,557
15,000
15,000
1977
32,550
17,450
50,000
11,250
8,750
20,000
1978
60,000
75,000
135,000
20,000
15,000
35,000
1979
130,000
112,002
242,002
30,000
20,000
50,000
*371 Other employees of Hepco received relatively little or no bonuses for fiscal years 1978 and 1979. [5]Hepco provided its employees with health and life insurance. [6] It also had a profit sharing plan for its salaried employees. During fiscal years 1978 and 1979, Hepco made the following contributions to its profit sharing plan on behalf of Dewey and Doris: Plan Year Ended March 31
Dewey
Doris
1978
$20,250
$5,250
1979
36,303
7,500
Respondent determined that the compensation paid by Hepco to Dewey and Doris (including contributions to the Plan) during fiscal years ended March 31, 1978 and 1979 exceeded that which would constitute "a reasonable allowance for salaries *372 and compensation for personal services rendered" within the meaning of section 162(a)(1). The following shows respondent's determination with respect to the reasonable compensation issue: 1978
1979
Dewey
Doris
Dewey
Doris
Compensation Paid
(Salary and Bonus)
$135,000
$35,000
$242,002
$50,000
Contribution to
Profit Sharing Plan
20,250
5,250
36,303
7,500
$155,250
$40,250
$278,350
$57,500
Amount Deemed
Reasonable
96,199
14,735
117,858
15,178
Amount Disallowed
59,051
25,515
160,447
42,322
2. Tax Status of Plan
By letter dated April 14, 1975, respondent determined that the Trust qualified under section 401(a) and was tax-exempt under section 501(a). The determination letter contained a caveat that it would not be effective for plan years beginning after September 2, 1974. [7] Thus, the letter covered only the plan year which ended March 31, 1975. The Plan provided that Hepco could make contributions of up to 15 percent of an employee's salary and bonus. The Plan covered only salaried employees. The following shows those persons who were employed by Hepco on March 31, 1978 and 1979, the amounts of salary and *373 bonus paid to each, and whether the employee was a participant in, or excluded from, the Plan: 1978
Salary & Bonus for Year
Employees at Fiscal Year End
(Annualized)
Participant
Excluded
Halligan, Dewey
$135,000.00
Halligan, Doris
35,000.00
Marithew, A.
$20,286.00
Nelson, C.
17,900.00
Eck, K.
13,300.00
Fenton, M.
11,720.00
Gary, R.
9,960.00
Gribble, K.
9,760.00
1979
Salary & Bonus for Year
Employees at Fiscal Year End
(Annualized)
Participant
Excluded
Halligan, Dewey
$242,002.00
Halligan, Doris
50,000.00
Nelson, C.
20,000.00
Fenton, M.
$15,000.00
Gray, R.
14,480.00
Gribble, K.
12,400.00
Apodaca, R.
11,880.00
Gauthier, D.
6,860.00
For fiscal years 1976 through 1979 Hepco contributed the following amounts to the Plan on behalf of its employees: Employer
Employee
Contribution
1976
1977
1978
1979
Halligan, Dewey
$3,837
$7,500
$20,250
$36,303
Halligan, Doris
2,250
3,000
5,250
7,500
Nelson, C.
630
2,685
3,143
Eck, K.
2,054
N/A
Labutski
2,174
*374 Full vesting in the Plan occurred when the participant's employment with Hepco terminated by retirement, by death or by reason of total disability. In the event the participant's employment terminated for any other reason, his vested interest depended on the number of years of service he had accrued at the time of termination. The Plan contained the following vesting schedule: Years of Service
Percentage Vested
1
5
2
10
3
15
4
20
5
25
6
30
7
35
8
40
9
50
10
100
Respondent claims that in fiscal years 1978 and 1979, the Trust did not qualify for tax exemption under section 501(a) because the Plan failed to satisfy the qualification requirements of sections 401(a)(7), 401(a)(12), 401(a)(14), and 401(a)(16). Even if the Plan qualified in form, claims respondent, it did not qualify in operation because it discriminated in favor of employees who were officers, shareholders or highly compensated. According to respondent, disqualification of the Trust mandates inclusion of Hepco's contributions to the Plan in the incomes of Dewey, Doris, and Nelson. Dewey and Doris Halligan assert that they were unaware that *375 the Trust did not satisfy all requirements for qualification. They maintain that the Plan and Trust were operated and administered in good faith and were in substantial compliance with the law. The Halligans contend that once they were informed that the Plan did not comply with all the technical statutory requirements for qualification, they and Hepco were willing to take all necessary actions and make all changes necessary to bring the Plan into compliance with the statutory requirements. Petitioners further claim that the Plan is not discriminatory in operation because it covers a fair cross-section of Hepco's employees. Alternatively, petitioners argue, even if the Trust is not qualified, Hepco is entitled to deduct its contributions to the Trust to the extent such contributions are included in the income of the Plan participants. OPINION Issue 1. Reasonable Compensation
Section 162(a)(1) allows as a deduction all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * a reasonable allowance for salaries *376 or other compensation for personal services actually rendered." [8]
The reasonableness of the amount of compensation paid for services depends upon the facts and circumstances of the particular case. Amounts which are designated as salary payments to shareholder-employees of a closely-held corporation may, in fact, be distributions of profits (which are not deductible by the corporation). Thus, because employees who are controlling shareholders of closely-held corporations set their own compensation, the reasonableness of the amount of such compensation necessitates our close scrutiny in order to determine if the payment is what it purports to be or is in reality a distribution of corporate profits. Trinity Quarries, Inc. v. United States,679 F.2d 205 (11th Cir. 1982); Levenson & Klein, Inc. v. Commissioner,67 T.C. 694, 711 (1977). *377 Factors considered in determining the amount of compensation that is reasonable include: (1) the employee's role in the company; (2) the size and complexity of the company's business; (3) a comparison of the employee's salary with the salaries paid by similar companies for similar services; (4) a comparison of the employee's salary with the gross income and net income of the company; (5) the salary policy of the company for all its employees; (6) a comparison of the amount of salaries paid to the amount of distributions to stockholders; and (7) whether an inactive, independent investor would be willing to compensate employees like Dewey and Doris at the salary levels Dewey and Doris received. No one single factor is dispositive; all factors must be considered. Mayson Mfg. Co. v. Commissioner,178 F.2d 115 (6th Cir. 1949), revg. a Memorandum Opinion of this Court; Elliotts, Inc. v. Commissioner,716 F.2d 1241 (9th Cir. 1983), revg. and remanding a Memorandum Opinion of this Court. After a careful review of the entire record, and after *378 considering all of the factors set forth above, we believe that the amounts of Dewey's and Doris' compensation payable in the form of salaries and bonuses which were reasonable for Hepco's fiscal years ended March 31, 1978 and 1979 (excluding contributions made to the Plan) would have been as follows [9]: Fiscal Year Ended
Fiscal Year Ended
March 31, 1978
March 31, 1979
Dewey
$100,000
$150,000
Doris
20,000
25,000
We recognize that Dewey was primarily responsible for Hepco's success, yet we also must keep in mind that Hepco was not only a relatively small corporation during 1978 and 1979 but that Hepco as a manufacturing company, not a personal service company. We also recognize that it is not unusual to pay year-end bonuses based on the success of the business; however, we note that the amount of the bonuses paid to Dewey and Doris were relatively high and that little, if any, bonuses were paid *379 to nonstockholder-employees. In our opinion, a company similar to Hepco in size and complexity would pay a salary and bonus to a person performing services similar to those performed by Dewey for Hepco not exceeding $100,000 for 1978 and $150,000 for 1979. Insofar as Doris is concerned, we believe that such a company would pay a salary and bonus to a person performing services similar to those performed by her not exceeding $20,000 for 1978 and $25,000 for 1979. The dollar amount of increase in salary and bonus from 1977 to 1978 and from 1978 to 1979 for both Dewey and Doris are highly disproportionate to the amount of increases paid to the other employees of Hepco. In our opinion, had Dewey and Doris not been the sole shareholders of Hepco, they would not have received such large salaries and bonuses nor would they have received such large increases from year to year. We have considered the testimony of petitioners' expert witness and find it unpersuasive. Respondent presented no expert testimony and offered no explanation as to how he arrived at the amounts of compensation he deemed to be reasonable. Thus, to a large extent, we were given little useful guidance. As to *380 the amounts which we have determined to be paid to the Halligans in excess of reasonable compensation, Hepco is not entitled to a deduction. The burden of proof remained with petitioners to show that respondent erred when it determined that such amounts were taxable as dividends. Nor-Cal Adjustors v. Commissioner,503 F.2d 359 (9th Cir. 1974), affg. a Memorandum Opinion of this Court. Section 1.162-7(b), Income Tax Regs., provides that where unreasonable salaries are paid to shareholders and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it "would seem likely" that the excessive payments are a distribution of earnings. Here, the only recipients of unreasonably high compensation were Hepco's shareholders and officers. Hepco paid no dividends in 1978, and paid only an insubstantial amount in 1979. Accordingly, we hold that respondent correctly characterized the excessive payments to the Halligans as dividends which are not subject to the 50 percent maximum tax rate provided for in section 1348. Issue 2. Tax Status of Plan
*381 Section 404(a)(3) allows a deduction, subject to limitations, for employer contributions to a tax-exempt profit-sharing trust. A profit-sharing trust is exempt from taxation under section 501(a) if the plan of which it is a part meets all the qualification requirements set forth in section 401(a). Section 401(a) sets forth twenty-one qualification requirements. These requirements fall into two categories--requirements as to form and requirements as to operation of the plan. There is no dispute that the Plan did not satisfy all the form requirements. However, Petitioners argue that the Trust should be treated as a qualified trust because: (1) the Plan was submitted to the Internal Revenue Service for determination and qualification and a favorable determination letter was received. (2) the Plan was operated and administered in good faith. (3) the Plan was in substantial compliance with the law and any technical defects were correctable pursuant to the provisions of the ERISA Non-Compliance Enforcement Program (ENCEP). [10]
(4) Dewey, *382 on behalf of Hepco and the Plan, offered to do whatever was necessary to bring the Plan into compliance once he became aware that the Plan was defective in form. [11]
While we are sympathetic to petitioners' plight, we agree with respondent that the Trust is not a qualified tax-exempt profit sharing trust. Respondent's determination letter explicitly provided that qualification would not be effective for plan years beginning after September 2, 1974. We accept petitioners' assertion that at all times they acted in good faith. This Court has held, however, that the good faith *383 intentions of petitioners do not satisfy the statutory requirements of sections 401, et seq.Gillis v. Commissioner,63 T.C. 11, 17 (1974). We have in the past rejected taxpayers' argument that we should balance the minimal harm caused by a defective plan provision never brought into operation against the harm to plan participants if the plan is not qualified. Tionesta Sand & Gravel, Inc. v. Commissioner,73 T.C. 758 (1980), affd. in an unpublished opinion 642 F.2d 444 (3rd Cir. 1981). Where a trust fails to specifically comply with the literal requirements of section 401, and such compliance cannot be inferred from a reading of the plan as a whole, we have declined to find that the trust nevertheless qualified under section 401. Bolinger v. Commissioner,77 T.C. 1353 (1981). Even if we excused compliance with the form requirements of section 401, we agree with respondent that the Plan is discriminatory in operation. Section *384 401(a)(3) provides that a trust, in order to constitute a qualified trust, must satisfy the participation standards of section 410. Section 410(b)(1) provides that a trust is not qualified under section 401(a) unless it benefits a specific percentage of employees, [12] or the classification of employees under the plan is found by the Secretary not to be discriminatory in favor of employees who are officers, shareholders or highly compensated (hereinafter referred to as prohibited group employees). [13] Petitioners do not contend that they satisfy the percentage requirements set forth in section 410(b)(1)(A). Rather, petitioners contend that they have met the "fair cross section" test set forth in Revenue Ruling 83-58, 1983-1 C.B. 95, and that the Trust was therefore qualified under section 410(b)(1)(B). That test provides that plans which cover a fair cross section of employees (that is, plans which cover employees in all compensation ranges and where employees in the middle and *385 lower compensation brackets are covered in more than nominal numbers) satisfy the coverage classification requirements of section 410(b)(1)(B). We note initially that under section 410(b)(1)(B), qualification of a trust is conditioned on a finding by the Secretary that the classification set up by the employer is not discriminatory. In this area, the Commissioner's finding is "given a shade more than its usual substantial weight." Pepsi-Cola Niagara Bottling Corp. v. Commissioner,399 F.2d 390, 393-394 (2d Cir. 1968), revg. 48 T.C. 75 (1967). We have held that to prevail on the issue of whether a trust meets the requirements of section 410(b)(1)(B), the taxpayer must show that the Commissioner's determination was arbitrary, unreasonable, or an abuse of discretion. Loevsky v. Commissioner,55 T.C. 1144 (1971), affd. per curiam 471 F.2d 1178 (3rd Cir. 1973), cert. denied *386 412 U.S. 919 (1973). In the situation involved herein, the Plan did not cover employees in all compensation ranges. It failed to cover any lower compensated employees. Thus there was not a "fair cross section" coverage under the Plan of all employees of Hepco. The consequences of disqualification of the Trust under section 401 are not, however, as harsh as respondent suggests. Of course, the Trust is not exempt from taxation under section 501. However, respondent apparently included in the incomes of the individual petitioners the full amount of contributions made to the Trust on their behalf. [14]Section 402(b) mandates a different result. Under section 402(b), contributions to a non-exempt trust are included in the gross income of the employee *387 in accordance with section 83, except that the value of the employee's interest in the trust is substituted for the fair market value of the property. Under section 83, transfers to a non-qualified trust are included in an employee's income in the first taxable year in which the employee's rights in the contribution become substantially vested. Section 1.402(b)-1(b)(4), Income Tax Regs., provides that if an employee's interest in a trust is only partially vested, the amount included in income is the percentage of his interest in the trust which is vested. An example of the calculation necessary to determine the amount of inclusion is contained in section 1.402(b)-1(b)(7), Income Tax Regs.
Respondent determined, and we agree, that Dewey and Doris had interests in the Trust which are properly includible in income in 1977, 1978 and 1979 and that Nelson had such an interest in 1978 and 1979. However, those interests were only partially vested. The parties, in their Rule 155 computation, can determine the proper amounts of inclusion, *388 bearing in mind that not all of the contributed amounts are includible in income. Section 83(h) provides that an employer is allowed a deduction under section 162 in an amount equal to the amount included in the employee's income under section 83. The employer's deduction is allowable in the employer's taxable year in which or with which ends the employee's taxable year of inclusion as long as the deferred compensation, together with the non-deferred compensation, is reasonable. Edwin's, Inc. v. United States,501 F.2d 675 (7th Cir. 1974). We hold that the deferred compensation Dewey, Doris and Nelson received, when added to Nelson's actual salary and bonus and the amount of Dewey's and Doris' salaries and bonuses heretofore found to be reasonable, is the total amount of their reasonable compensation. Accordingly, Hepco is entitled to deductions for the salaries and bonuses of Dewey, Doris and Nelson under section 162 for taxable years 1978 and 1979 in the amounts previously found to be reasonable and also for their deferred compensation, to the extent it is includible *389 in their incomes, as discussed above. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Hepco, Inc., docket No. 7419-83; Hepco, Inc. Profit Sharing Plan and Trust, docket No. 7420-83; and Clarence Nelson, docket No. 7421-83.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
3. The assets transferred were: ↩
Stated Value
Cash
$ 5,000.00
Accounts receivable
13,015.65
Inventories (at cost)
17,089.97
Depreciable assets (at net book value)
1,333.00
Automobile (cost minus depreciation)
4,988.00
Patents
50,920.00
Goodwill
1,000.00
$93,346.62
4. The note bore interest at the rate of 10 percent per annum and was payable in monthly installments over a five-year period.↩
5. The amount of bonuses paid to all employees (including Dewey and Doris) for fiscal years 1978 and 1979 was $96,000 and $145,102, respectively. Thus, for fiscal years 1978 and 1979, Dewey and Doris together received 94 percent and 91 percent, respectively, of the amount of all bonuses paid. ↩
6. Dewey, as president of the corporation, could authorize the corporation to pay for reasonable medical and dental expenses not covered by the corporate health plan on a discretionary basis.↩
7. On September 2, 1974, the Employee Retirement Income Security Act (ERISA) was enacted, Pub.L. 93-406, 88 Stat. 829.↩
8. Section 1348↩ limits the maximum rate on personal service taxable income to 50 percent; this 50 percent maximum tax rate applies to compensation income, not to dividend income.
9. As discussed infra, a percentage of the contributions to the Plan are also includible in income. The total reasonable compensation paid by Hepco to Dewey and Doris includes the amounts set out above plus amounts included in income under section 83↩.
10. In response to petitioners' request for relief under ENCEP, respondent argues: (1) ENCEP, as extended, expired on December 31, 1983; thus, it is not now available to petitioners, and (2) ENCEP is a discretionary function of the Secretary of the Treasury. We agree with respondent. ↩
11. Respondent contends, and petitioners concede, that Hepco made contributions to the Plan in excess of the limitation imposed by section 415. Petitioners argue, however, that the error was inadvertent and is correctable.↩
12. Section 410(b)(1)(A)↩. 13. Section 410(b)(1)(B)↩.
14. Respondent's rationale for the figures that appear in the notices of deficiency is not disclosed. The additional compensation charged to Dewey and Doris does not equal the amounts contributed to the Plan on their behalf, yet disqualification of the Plan is the only reason given for additions to compensation income.↩