KOLLIPARA RAJSHEKER, M.D., INC., AND KOLLIPARA RAJSHEKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kollipara Rajsheker, M.D., Inc.
Docket No. 16418-90R
United States Tax Court
T.C. Memo 1992-628; 1992 Tax Ct. Memo LEXIS 656; 64 T.C.M. (CCH) 1153; October 26, 1992, Filed *656 For Petitioners: William E. Huber. For Respondent: Robin L. Herrell. WRIGHT
WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: Petitioners seek a declaratory judgment pursuant to section 7476 [1] that the Kollipara Rajsheker, M.D., Inc., Profit Sharing Plan qualifies under section 401(a) for the plan years ending November 30, 1985, 1986, 1987, and 1988. This case was submitted on the basis of the pleadings, the stipulation as to the administrative record, and the facts as set forth in the stipulation of facts, including exhibits, which are incorporated herein by this reference. The principal issue relates to the timeliness of amendments to petitioners' profit-sharing plan to comply with the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, and the Retirement Equity Act of 1984 (REA), Pub L. 98-397, 98 Stat. 1426. As discussed in the ensuing opinion and after giving consideration to concessions made by respondent, we hold that petitioners' profit-sharing plan was not timely amended in order to comply with these acts and, therefore, did not qualify under section 401(a) for the plan years ending November 30, 1986, 1987, and 1988. *657 At the time they filed their petition, petitioner Kollipara Rajsheker, M.D., Inc., had its principal place of business in St. Marys, Ohio, and petitioner Kollipara Rajsheker resided in St. Marys, Ohio. Petitioner Kollipara Rajsheker, M.D., Inc., (hereinafter the employer), employer identification number 34-1318566, accounted for and reported Federal income tax on the basis of a calendar year. On October 1, 1984, the employer adopted the Kollipara Rajsheker, M.D., Inc., Profit Sharing Plan (hereinafter the Plan), designated Plan No. 1, effective December 1, 1984. Petitioner Kollipara Rajsheker is an individual plan participant. The Plan document specifies a plan year commencing on December 1 of each year and ending on November 30 of each subsequent year. However, Forms 5500 filed for the Plan indicate calendar plan years for 1985 and 1986. On February 1, 1985, the employer amended the Plan to comply with the requirements of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324. The Plan as originally adopted and as amended on February 1, 1985, did not, however, comply with DEFRA 1984 or REA. On March 21, 1989, the employer amended the Plan *658 to comply with the requirements of DEFRA 1984 and REA. First Submission
On November 26, 1984, the Internal Revenue Service (IRS) received an initial request from the employer for a favorable determination for the Plan on Form 5307, Short Form Application for Determination for Employee Benefit Plan. The employer also submitted Form 5302, Employee Census. The Form 5307 indicated that the Plan was a master or prototype plan [2] and that the letter serial number [3] of the determination letter issued with respect to the master or prototype plan was C760193A. This letter serial number was assigned to a prototype money purchase plan submitted by the State Farm Life Insurance Co. (hereinafter State Farm Plan). The employer never adopted the State Farm Plan. The Plan document does not, even in the general sense, identify itself as being a master or prototype plan. *659 On January 2, 1985, the IRS returned the above-referenced submission to the employer along with a request for further information. The IRS specifically requested that the employer provide the correct employer identification number and that it submit an executed copy of the adoption agreement. [4] The IRS stated that it needed this additional information before it could consider the employer's request for a determination. On January 10, 1985, the IRS acknowledged receipt of the above-requested information. The employer did not return at this time Form 5307, Form 5302, or a signed adoption agreement. On January 17, 1985, an employee of the IRS's Employee Plan and Exempt Organizations Division, Carol Gerold, telephoned the employer's attorney and representative, Mr. Huber, and requested that the employer submit Form *660 5307, Form 5302, a signed adoption agreement, and all related material. The stipulated administrative record does not indicate the ultimate disposition of this initial submission. Second Submission
Sometime between January 17, 1985, and May 14, 1985, the employer submitted another request for a favorable determination for the Plan as a master or prototype plan. On May 14, 1985, IRS employee plans specialist John Hauser sent the employer a letter requesting further information. The IRS at this time requested a copy of the Plan's section 415 language required by Notice 83-11, 1983-2 C.B. 410, an opinion letter for the master or prototype plan, and a Schedule T. The IRS indicated that it needed this additional information before it could continue to process the request for a determination. On May 30, 1985, Mr. Hauser sent a second letter to the employer requesting the above-referenced information. On June 6, 1985, Mr. Hauser contacted Mr. Huber by telephone. On June 14 and June 21, 1985, Mr. Huber sent letters to Mr. Hauser notifying him that the employer was withdrawing its application for the Plan and that it would be resubmitted at a later *661 date. Third Submission
On December 18, 1985, the employer submitted its third request for a favorable determination for the Plan. This submission included Form 5307 indicating that the Plan was a master or prototype plan and that the sponsoring plan was the State Farm Plan. On April 11, 1986, the employer requested a status report with respect to this submission. On April 17, 1986, Mr. Hauser responded thereto by telephone. On May 9, 1986, the IRS responded by written notification acknowledging receipt thereof and indicated that the employer could expect a response to its application within 145 days. On July 28, 1986, the IRS requested further information from the employer before it could continue to process the request for a determination. The IRS advised the employer that if it was adopting a master or prototype plan document that was waiting for approval from the National Office, the employer could request that its submission be held in suspense until approval of the master or prototype plan was received. The IRS attached a sample format cover letter that the employer could use to make such a request from the National Office. The IRS further advised the employer *662 that if it needed more time to gather the requested information, it could withdraw its application and resubmit it within 91 days and such would be considered timely for purposes of section 401(b). On August 6, 1986, employee plans specialist Carolyn A. Plechaty contacted Mr. Huber by telephone. The record does not indicate the purpose or content of this telephone conversation. On August 8, 1986, the employer submitted a letter to the regional office requesting that its application for a determination with respect to the Plan be held in suspense until an opinion letter was issued by the National Office with respect to the master or prototype plan. Within this letter, the employer did not identify the Plan's sponsoring organization or the name of the sponsoring master or prototype plan. On March 2, 1987, the IRS returned the materials submitted by the employer on December 18, 1985, and requested additional information. The stipulated administrative record does not indicate the ultimate disposition of this third submission. Fourth Submission
On March 1, 1988, the employer made its fourth submission to the IRS requesting a favorable determination for the Plan. The parties *663 are unable to determine precisely which documents were included in this submission. The exhibits indicate that this submission was made on Form 5307. On March 15, 1988, the IRS returned all the submitted information and requested that the employer submit additional information before it could process the request for a determination. Specifically, the IRS requested that the employer submit an updated Form 5307. On March 18, 1988, the IRS contacted the employer to notify it that it had not paid the required user's fee of $ 100. The stipulation of facts indicates that the employer made a new submission on May 10, 1988. The exhibits indicate, however, that on this date, the employer simply submitted the information requested by respondent on March 15 and March 18, 1988. Included with this May 10, 1988, submission was a copy of the March 18, 1988 letter, Form 2848, Form 5307, Form 8717, a copy of the Plan, copies of the February 1, 1985, amendments to the Plan, an Amendment of State Farm Corporate Prototype Defined Contribution Plans, an Amendment of State Farm Prototype Assumed Benefit Plan (L) and State Farm Prototype Money Purchase Plan (L), and an Amendment of State Farm Prototype *664 Money Purchase Plan (L) (Integrated & Non-Integrated). The Form 5307 indicated that the sponsoring plan was the State Farm Plan with letter serial number C760193A. On May 27, 1988, the IRS returned all the above documents and requested further information, including a copy of the opinion letter issued to the sponsoring organization. The IRS indicated that it needed this additional information before it could consider the request for a determination. The stipulation of facts indicates that on July 6, 1988, the employer made a new submission seeking a favorable determination for the Plan. The exhibits indicate, however, that on this date the employer sent the IRS the information it had requested on May 27, 1988, and informed the IRS that they were waiting for an opinion letter to be issued. On September 28, 1988, the employer withdrew the Form 5307 submitted on July 6, 1988. Fifth and Final Submission
On September 28, 1988, the employer resubmitted the Plan for a determination as to its qualification as an individually designed plan on Form 5301, Application for Determination for Defined Contribution Plan. On October 26, 1988, the IRS acknowledged receipt of this submission *665 and indicated that it would be processed within 145 days. On February 16, 1989, and again on March 7, 1989, the IRS requested further information from the employer before it could continue to process the request for a determination. On March 21, 1989, the employer's board of directors adopted a resolution to amend the Plan. The Plan as amended on this date met the requirements of section 401(a) as an individually designed plan. The employer never adopted amendments for DEFRA 1984 and REA to qualify the Plan as a master or prototype plan. On April 3, 1989, Mr. Huber sent the amendments to the IRS. On May 16, 1989, the IRS issued a favorable determination letter with respect to the Plan stating that the Plan as amended on March 21, 1989, met all the requirements of section 401(a) as an individually designed plan for plan years beginning after November 30, 1988. 1986 Audit
On March 22, 1988, the IRS announced an examination of the Plan's Form 5500 for 1986. Respondent and the employer corresponded thereafter regarding the audit. On March 6, 1989, the IRS issued a letter to the employer determining that the Plan did not meet the requirements of section 401(a) for the plan *666 years ending December 31, 1984, 1985, 1986, and 1987. The IRS determined that the Plan was not amended within the time required by Notice 85-5, 1985-1 C.B. 427, to meet the qualification requirements of TEFRA, DEFRA 1984, and REA. The employer was notified therein that it had 30 days from the date of the letter in which to appeal the determination contained therein. On April 3, 1989, the employer filed a formal appeal from the results of the examination with the central regional office of the IRS. A conference was scheduled with the central regional office for June 14, 1989. On May 31, 1989, the employer requested that the conference be rescheduled for a later date. On April 20, 1990, the Appeals office issued a final revocation letter to the employer in which it stated that the Plan did not meet the requirements of section 401(a) for plan years ending December 31, 1984, 1985, 1986, and 1987, and that the Plan's trust was no longer exempt under section 501(a). The IRS made this determination because it determined that the Plan was not timely amended to meet the requirements of TEFRA, DEFRA 1984, and REA. Petition for Declaratory Judgment
On *667 July 20, 1990, the employer filed a petition with this Court (which was amended on November 28, 1990) for a declaratory judgment pursuant to section 7476 seeking a determination regarding the Plan's section 401 qualifications for the plan years ended December 31, 1984, 1985, 1986, and 1987. The parties agree that the correct plan years to which respondent's April 20, 1990, determination and petitioner's present declaratory judgment petition pertain are November 30, 1985, 1986, 1987, and 1988. Respondent has conceded that the Plan as amended on February 1, 1985, complies with the requirements of TEFRA. Respondent has also conceded that the Plan met all the requirements of section 401(a) for the plan year ending November 30, 1985. The issue remaining for decision is whether the Plan was amended to comply with the requirements of DEFRA 1984 and REA in order to qualify under section 401(a) for the plan years ending November 30, 1986, 1987, and 1988, and whether the Plan's trust was exempt under section 501(a) for the corresponding periods. The compliance date for all amendments required by REA and by DEFRA 1984, other than changes in top-heavy requirements, was the last day of the *668 first plan year beginning on or after January 1, 1985. [5] In the instant case, the first plan year that began on or after January 1, 1985, was the plan year commencing on December 1, 1985, and ending on November 30, 1986. Therefore, the Plan was required to comply with DEFRA 1984 and REA by November 30, 1986. However, the employer did not amend the Plan to comply therewith until March 21, 1989. Petitioners do not dispute that the Plan was not timely amended to comply with the requirements of DEFRA 1984 and REA for the plan years ending November 30, 1986, 1987, and 1988. [6]
*669 Citing section 401(b), [7] however, the employer asserts that the March 21, 1989, amendments should apply retroactively to qualify the Plan under section 401(a) for these years. Section 401(b) provides that an amendment will be given retroactive effect for purposes of qualification under section 401(a) if the amendment is made by the time prescribed by law, including extensions, for the employer to file its tax return for the year in which the Plan is adopted. Sec. 401(b). *670 In the instant case, the employer, a corporation, reported income and expenses for tax purposes on the basis of a calendar year. The employer adopted the Plan on October 1, 1984. Therefore, the time for the employer to file its tax return for the year in which the Plan was adopted, assuming no extensions were given, was March 15, 1985. See sec. 6072(b). The employer did not amend the Plan to comply with DEFRA 1984 and REA until March 21, 1989. Pursuant to section 1.401(b)-1, Income Tax Regs., [8] an amendment to a plan is also given retroactive effect if made within a plan's "remedial amendment period". For this potentially extended amendment period to apply, a plan must fail to comply with the Code solely as a result of a "disqualifying provision" as that term is defined within section 1.401(b)-1(b), Income Tax Regs.Sec. 1.401(b)-1(a), Income Tax Regs. The Plan in the instant case fails to satisfy Code requirements for the plan years ending November 30, 1986, 1987, and 1988 due to its failure to comply with DEFRA 1984 and REA. As discussed in the following paragraphs, such is not deemed a disqualifying provision as defined in the regulations. *671 The first disqualifying provision specified within the regulations applies to a provision of a plan (or an absence of a provision to a plan) that causes the plan not to be in compliance with the Code on the date the plan first becomes effective. Sec. 1.401(b)-1(b)(1), Income Tax Regs. In the instant case, the Plan was not required to comply with DEFRA 1984 or REA on the date it first became effective. See supra pp. 11-12. Therefore, there were no provisions in the Plan or absences of such mandated by these acts that caused the Plan not to comply with the Code on the date the Plan became effective. Accordingly, this first disqualifying provision is inapplicable to the instant case. The second disqualifying provision applies to a provision of a plan that results in the failure of the plan to satisfy the qualification requirements of the Code by reason of a change in such requirements effected by TEFRA, the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, or the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, 101 Stat. 1330. Sec. 1.401(b)-1(b)(2)(i) and (ii), Income Tax Regs. *672 Because the Plan in the instant case failed to comply with the Code during the years at issue due to changes promulgated by DEFRA 1984 and REA, this disqualifying provision is inapplicable. The third disqualifying provision applies to provisions of a plan that result in the failure of the plan to satisfy the qualification requirements of the Code by reason of a change in Code requirements effected by amendments to the Code as designated by the Secretary in his discretion. Sec. 1.401(b)-1(b)(2)(iii), Income Tax Regs. The Secretary has not, in his discretion, designated a plan's failure to comply with changes promulgated by DEFRA 1984 and REA as a disqualifying provision. [9]
*673 In sum, the Plan failed to satisfy the requirements of section 401(a) in the years at issue due to its failure to comply with DEFRA 1984 and REA. Such is not deemed a disqualifying provision as defined by the regulations. Accordingly, section 401(b) does not operate to make the March 21, 1989, amendments retroactively applicable to the plan years at issue. We have held, however, that section 401(b) is merely a safe harbor which guarantees that if a plan is amended within the timeframe set out in the statute, retroactive effect must be given to the amendment. Bolinger v. Commissioner, 77 T.C. 1353, 1360 (1981); Aero Rental v. Commissioner, 64 T.C. 331, 341 (1975). Under certain circumstances, an amendment made outside of the statutory timeframe may still be given retroactive effect. Bolinger v. Commissioner, supra at 1360; Aero Rental v. Commissioner, supra at 341. In order that one might qualify for such treatment, two conditions must be satisfied: (1) No circumstances must have arisen which caused the objectionable provisions of the plan to be *674 called into operation, and (2) the employer must have exercised reasonable diligence in attempting to obtain a favorable determination letter from the IRS for the plan. Bolinger v. Commissioner, supra at 1360; Engineered Timber Sales, Inc. v. Commissioner, 74 T.C. 808, 830 (1980); Oakton Distributors, Inc. v. Commissioner, 73 T.C. 182, 190 (1979); Jack R. Mendenhall Corp. v. Commissioner, 68 T.C. 676, 681 (1977); Aero Rental v. Commissioner, supra at 341. The burden of proof on these issues is on petitioners based upon the administrative record. Rule 217(c); Linwood Cemetery Association v. Commissioner, 87 T.C. 1314, 1323 (1986). As discussed in the following paragraphs, the facts presented in the stipulated record in the instant case indicate that neither prong of this test was satisfied. In November 1984, almost immediately upon adopting the Plan on October 1, 1984, the employer attempted to obtain a favorable determination letter for the Plan. The employer did not, however, obtain *675 such a determination until May 16, 1989. Over nearly a 4-year period, petitioners submitted at a minimum five different requests for a determination for the Plan. The ultimate disposition of two of these submissions is not indicated by the record, as if the employer simply abandoned these submissions. Four of the submissions failed to include all the required information and/or were replete with omissions and errors. Thus, for nearly 4 years respondent was unable to even consider whether the Plan qualified under section 401(a) due to the employer's failure to submit a complete and accurate application for a determination. We find such indicative of the employer's lack of diligence in obtaining a favorable determination for the Plan. Other critical evidence of the employer's lack of diligence is the employer's inexplicable manner of attempting to achieve a favorable determination. The employer initially indicated that the Plan was a master or prototype profit-sharing plan. The Plan document does not identify itself even in the general sense as being a master or prototype plan. The identity of the alleged master or prototype plan is unclear. Three of the employer's submissions *676 indicate that the master or prototype plan was the State Farm Plan. The employer, however, never adopted the State Farm Plan. Further, when the employer requested that one of the Plan's submission be held in suspense until a favorable opinion letter had been received, it did not even indicate what master or prototype plan it was considering adopting that was currently before the IRS waiting for its opinion letter. Finally, the employer never amended the Plan to qualify it as a master or prototype plan and ultimately abandoned this course of action and instead submitted the Plan as an individually designed plan. The record fails to explain the reasons for the employer's erratic behavior in the above respect. Approximately 4-1/2 years elapsed after the employer submitted its first request for a favorable determination for the Plan before it obtained a favorable determination. More than 27 months elapsed after the November 30, 1986, compliance date before the employer finally amended the Plan to satisfy DEFRA 1984 and REA. Contrary to petitioners' contentions, the record does not indicate that respondent contributed in any way to the lengthy administrative process involved in *677 the employer's obtaining a favorable determination or to the employer's failure to amend the Plan to comply with DEFRA 1984 or REA prior to March 21, 1989. We find that even though the employer promptly attempted to obtain a favorable determination letter for the Plan, the employer failed to exercise due diligence in obtaining this determination. Even had the employer exercised due diligence in obtaining a favorable determination for the Plan, the record fails to show that no circumstances arose prior to the adoption of the March 1989 amendments that caused the objectionable provisions of the Plan to be called into operation. In sum, petitioners have failed to prove, based upon the administrative record, that the two-prong test enunciated in Bolinger v. Commissioner, supra and Aero Rental v. Commissioner, supra, applies to the instant case. Accordingly, we conclude that the March 21, 1989, amendments do not retroactively apply to the Plan to make it comply with the requirements of section 401(a) for the plan years ending November 30, 1986, 1987, and 1988. Therefore, we conclude that the Plan does not qualify *678 under section 401(a) for the plan years ending November 30, 1986, 1987, and 1988, and that the Plan's trust was not exempt under section 501(a) for the corresponding periods. As conceded by respondent, however, the Plan does qualify under section 401(a) for the plan year ending November 30, 1985, and the Plan's trust is exempt under section 501(a) for this corresponding period. To reflect concessions and the foregoing, An appropriate decision will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. A master plan is a plan that is made available by a sponsoring organization for adoption by employers and for which a single funding medium is established for the joint use of all adopting employers. Rev. Proc. 84-23, 1984-1 C.B. 457, 459. A prototype plan is the same as a master plan except that a separate funding medium is established for each adopting employer. Id. The sponsoring organization must submit a request for an opinion letter relating to a master or prototype plan to the IRS's National Office whereupon the IRS will issue an opinion letter as to the acceptability under sec. 401 of the form of the plan and any related trust or custodial account. Id. at 462. An opinion letter issued to a sponsoring organization does not constitute a ruling or determination as to either the qualification of the plan as adopted by a particular employer or in the case of a prototype plan the exempt status of a related trust or custodial account. Id.↩
3. A "letter serial number" refers generally to the serial number on the opinion letter issued by the IRS with respect to the master or prototype plan made available by the sponsoring organization.↩
4. An adoption agreement is the portion of a plan containing all of the options that may be selected by the employer. Rev. Proc. 84-23, 1984-1 C.B. 457↩, 459.
5. The text of REA provided that all changes required by REA had to be made prior to the last day of the first plan year beginning after Dec. 31, 1984. Retirement Equity Act of 1984, Pub. L. 98-397, 98 Stat. 1426. The text of DEFRA 1984 provided several deadline dates for various provisions of that Act; the latest compliance date specified was the last day of the first plan year beginning after Dec. 31, 1984. Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, secs. 511-561, 98 Stat. 494, 854-901. The IRS announced in Notice 85-5, 1985-1 C.B. 427↩, that the latest compliance date for both acts was the last day of the first plan year beginning on or after Jan. 1, 1985. 6. Announcement 86-60, 1986-19 I.R.B. 17, extended the compliance date for employers adopting a master or prototype plan, provided certain conditions were met. Because the employer in the instant case never amended the Plan to qualify it as a master or prototype plan, Announcement 86-60↩ is not applicable.
7. Section 401(b) provides: (b) CERTAIN RETROACTIVE CHANGES IN PLAN. -- A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes for the whole of such period.↩
8. Sec. 1.401(b)-1, Income Tax Regs., provides: (a) General rule. Under section 401(b) a stock bonus, pension, profit-sharing, annuity, or bond purchase plan which does not satisfy the requirements of section 401(a) on any day solely as a result of a disqualifying provision (as defined in paragraph (b) of this section) shall be considered to have satisfied such requirements on such date if, on or before the last day of the remedial amendment period (as determined under paragraphs (c), (d) and (e) of this section) with respect to such disqualifying provision, all provisions of the plan which are necessary to satisfy all requirements of sections 401(a), 403(a), or 405(a)↩ are in effect and have been made effective for all purposes for the whole of such period. * * *
9. In Rev. Proc. 89-65, 1989-2 C.B. 786, the Secretary has added to the definition of such disqualifying provisions changes in the qualification requirements of the Code made by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342. In Notice 90-73, 1990-2 C.B. 353↩, the Secretary has added to this definition changes made by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106.